Lannis SMITH and Sherry L. Smith, Husband and Wife; Albert Kemp and Joyce E. Kemp, Husband and Wife; James Economou and Becky Economou, Husband and Wife; Norman Kelly, and Coney Island-Hot Weiners, Inc., an Oklahoma corporation, Plaintiffs-Appellants,

v.

WESTINGHOUSE ELECTRIC CORP., a Pennsylvania corporation, and Monsanto Company, a Delaware corporation, Defendants-Appellees,

and

Public Service Company of Oklahoma, an Oklahoma corporation, and IT Corp., a foreign corporation, Defendants-Nominal Appellees.

No. 64801.

Supreme Court of Oklahoma.

Jan. 13, 1987.

Jack N. Herrold, Laurence A. Yeagley, Chris Economou, Herrold, Gregg & Herrold, Inc., Tulsa, for plaintiffs-appellants.

Laurence L. Pinkerton, Hannibal B. Johnson, Messrs. Connors & Winters, Tulsa, for defendant-appellee Westinghouse Electric Corporation.

Ronald N. Ricketts, Messrs. Gable & Gotwals, Tulsa, for defendant-appellee Monsanto Company.

OPALA, Justice.

The plaintiffs [1] bring this appeal from summary judgment for two of the defendants in the action—Westinghouse Electric Corporation [Westinghouse] and Monsanto Company [Monsanto]—grounded on the bar of limitation prescribed in 12 O.S. 1981 § 109.[2] The cited statute provides that an action may not be commenced against any person performing or furnishing the "design, planning, supervision or observation of construction or construction of an improvement to real property" more than 10 years after the improvement has been substantially completed.

■ The dispositive issue for our decision is whether an electrical transformer, the harm-dealing instrumentality in suit, constitutes an "improvement to real property" within the meaning of § 109. Assuming that § 109 is constitutional and available for invocation by a transformer's manufacturer,[3] we hold that, because an

---

1. The plaintiffs are (a) four persons who were exposed to toxic chemicals released by the explosion of two electrical transformers, (b) the wives of three of these injured persons and (c) a nearby restaurant where two of the injured parties worked.

2. The terms of 12 O.S. 1981 § 109 provide:
"No action in tort to recover damages
   (i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
   (ii) for injury to property, real or personal, arising out of any such deficiency, or
   (iii) for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement."

3. Since we announce today that the transformers here in contest are not "improvements to real property," we need not pause to consider any constitutional attacks made on § 109; nor need we settle the issue whether § 109 is appli-

cable to manufacturers. The judiciary will not decide constitutional issues in advance of strict necessity. When, as here, the legal relief sought clearly is affordable upon alternative grounds, consideration of constitutional infirmities is deemed precluded by a self-erected "prudential bar" of restraint. *I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 [1983] and *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 [1936] (Brandeis, J., concurring); see also, *Schwartz v. Diehl,* Okl., 568 P.2d 280, 283 [1977] and *Dablemont v. State, Department of Public Safety,* Okl., 543 P.2d 563, 564 [1975]. The constitutional challenges launched in this appeal must await our resolution at another time. See Olsen, Oklahoma's Statute of Repose Limiting The Liability of Architects and Engineers for Negligence: A Potential Nightmare, 22 Tulsa L.J. 85 [1986]; Westrick, Statutes of Limitations and Repose: The Decline and Rise of Statutes of Repose—*Witherspoon v. Sides Construction Co.,* 19 Creighton L.Rev. 509 [1986]; Drill and Hambleton, Applying Statutes of Limitations and Statutes of Repose, *Trial,* Nov. 1983 at 106; Dworkin, Product Liability of the 1980s: "Repose is not the Destiny" of Manufacturers, 61 N.C.L.Rev. 33 [1982]; Note, Actions Arising Out of Improvements to Real Property: Special Stat-

electrical transformer retains at all times its character as the personalty of the public utility supplying the electrical power, it is not an "improvement to real property" within the meaning and contemplation of § 109.

The essential facts necessary for our decision are clearly not in controversy. Public Service Company of Oklahoma [PSO][4] purchased an electrical transformer from Westinghouse in 1937. This transformer was located in a vault beneath the sidewalk adjacent to the Beacon Building in Tulsa and supplied electrical service to that building until its explosion in 1983. A short time later, a second transformer—purchased by PSO in 1938 from Westinghouse—was installed in the same vault. It exploded six months following its installation in *1984*. Both of the transformers contained PCB,[5] described as an essential compound manufactured and supplied by Monsanto. The plaintiffs alleged that the explosions released toxic by-products of PCB and that exposure to these toxins caused them harm. Acting on separate motions by Westinghouse and Monsanto, the trial court rendered judgment in favor of these defendants.

Implicit in the judgment before us is the trial court's conclusion, drawn from undisputed facts, that the transformers constituted an improvement to real property. By the terms of 68 O.S. 1981 § 2449[6] electric companies are required to submit a list of equipment used in the transmission of power for ad valorem tax assessment. A transformer is an essential component of the equipment used to transmit power.[7] Because a transformer is taxed as the exclusive property of the public utility, we must reject the notion that it may constitute an improvement to real property.

In their trial briefs the defendants relied principally upon two cases from other jurisdictions—*Mullis v. Southern Company Services, Inc.*[8] and *Jones v. Ohio Building Co.*[9] While the trial court may have found these authorities most persuasive, we reject them as inapposite.

In *Jones*, an Ohio trial court held that the construction and installation of an elevator was an improvement to real property.[10] The defendant there—the manufacturer and installer of the elevator—was held to be protected by an Ohio statute of repose similar to our 12 O.S. 1981 § 109.[11]

utes of Limitations, N.D.L.Rev. 43 [1981] and McGovern, The Status of Statutes of Limitations and Statutes of Repose in Product Liability Actions: Present and Future, 16 Forum 416 [1981].

4. PSO is a defendant in this action jointly with another entity, IT Corporation. The latter took charge of post-explosion clean-up work. Since neither of these two defendants is directly affected by the instant appeal, the caption designates them as nominal parties-appellee.

5. PCB, or Polychlorinated Biphenyls, a dielectric fluid, is described as an essential component of transformers. Monsanto supplied the PCB both for the first and the second transformer.

6. The pertinent terms of 68 O.S. 1981 § 2449 provide:

"Electric light and power companies doing business in this State shall return to the Oklahoma Tax Commission a statement under oath, showing ... the total amount of poles, wire and *other equipment* for the transportation or transmission of light, heat and power; ..." [Emphasis added.]

7. In the electrical power distribution system of a public utility a transformer is used to reduce main-line voltage to a level suitable for customer use. *Clinton Electric L.H. & P. Co. v. Snell*, 95 Ill.App. 552 [1900].

8. 250 Ga. 90, 296 S.E.2d 579 [1982].

9. 4 Ohio Misc.2d 10, 447 N.E.2d 776 [Ct.Com. PLeas 1982].

10. *Jones v. Ohio Building Co., supra* note 9 at 780.

11. Modern statutes of repose and statutes of limitation bear both similar and significantly different legal characteristics. They are alike in the sense that they are both designed to provide repose for the defendant. They are different in the sense that a *statute of limitation* serves to place a limit on the plaintiff's time to bring an action. After the prescribed time period has lapsed, a statute of limitation serves to *extinguish the remedy* for the redress of an *accrued* cause of action. A *statute of repose,* by way of contrast, restricts potential liability by limiting the time during which a cause of action can arise. It thus serves to bar a cause of action

Cases dealing with the status of elevators are of no consequence in deciding whether a transformer constitutes a real property improvement. This is so because elevators stand in a vastly different position. They serve an entirely dissimilar function and may be regarded as affixed to the interior of the building. In many instances, as it was the case in *Jones*, elevator equipment is owned by the proprietor of the building. The transformers in this suit were located in an underground vault adjacent to the building and had been neither purchased nor owned by the Beacon Building. They remained the property of PSO.[12]

In *Mullis, supra,* the Georgia Supreme Court held that an air circuit breaker (an integral part of an electrical system) was an improvement to real property.[13] The court reasoned that, because the electrical system was an improvement to real property, all of the component parts of the system must be accorded the same status.[14] The plaintiff's injuries in *Mullis,* unlike the harm in the present case, occurred while he was *on the premises* where the electrical system was located and while he was in physical contact with the circuit breaker.

The court, applying a three-prong test for assessing what constitutes an improvement,[15] concluded that the system enhanced the value of the real property *where the electrical facility was located.* While this may be a correct conceptual approach when the injury for which recovery is sought occurs on the public utility's property, it is not persuasive where, as here, the harm is dealt by an instrumentality located on property *serviced* by the public utility.

Two dissenting justices in *Mullis* perceived an inconsistency between that pronouncement and the one rendered in an earlier Georgia case, *Turner v. Marable-Pirkle, Inc.*[16] In *Turner* the court had held that the replacement of a transformer with one of greater capacity did not constitute an improvement to real property within the meaning of a Georgia statute of repose similar to § 109.[17] *Turner* squarely stands as authority for the principle that neither the erection of a utility pole nor the placing of equipment upon it will transmogrify these objects into improvements to real property within the meaning of the Georgia statute there under construction.

---

before it accrues. In a practical sense, a *statute of limitation* implicitly seeks to punish those who sleep on their rights, while the *statute of repose* operates to bar some plaintiffs' recovery, no matter how diligent they may have been in asserting their claims. Statutes of repose vary considerably among the jurisdictions that have adopted them—e.g., as to when the repose period begins to run and when it ends, the length of the repose period and the statutory exceptions to the time period. Statutes of repose now extant in various states appear to affect claims (a) pressed under the theory of products liability, (b) for medical malpractice and (c) for defective improvements to real property. For a thorough discussion of the statutes of repose, see *Witherspoon v. Sides Construction Co.*, 219 Neb. 117, 362 N.W.2d 35 [1985], and law review articles in footnote 3 *supra*.

**12.** In *Jones v. Ohio Building Co., supra* note 9 at 778–779, the court noted that the terms "fixture" and "improvement to real property" are not synonymous, and that in defining what constitutes an improvement to real property, courts have employed two distinct conceptual approaches—a common-law fixture analysis and a common-sense interpretation of the phrase. The latter approach, the court observed, has been preferred

since a fixture, by definition, is an improvement to real property, but an improvement need not be a real fixture; moreover, a chattel that could not qualify as a real fixture might be viewed as an "improvement" to real property. *We leave unsettled by this opinion the question whether a § 109 "improvement to real property" must always meet our statutory definition of real property.* See in this connection the provisions of 60 O.S. 1981 §§ 5, 6, and 7, for definition of real property.

**13.** *Mullis v. Southern Company Services, Inc., supra* note 8, 296 S.E.2d at 584.

**14.** *Mullis v. Southern Company Services, Inc., supra* note 8, 296 S.E.2d at 583–584.

**15.** The factors included for consideration in this test are: [1] the permanence of the improvement; [2] the degree to which the improvement enhances the value of the realty and [3] the intention of the parties to make the improvement one to the realty.

**16.** 238 Ga. 517, 233 S.E.2d 773 [1977].

**17.** *Turner v. Marable-Pirkle, Inc., supra* note 16, 233 S.E.2d at 774.

In Oklahoma, the answer must be derived from our taxing scheme. Because ad valorem taxes for the electrical equipment in suit are assessed solely against the public utility using it, the transformers in question were not improvements to real property. Neither Westinghouse nor Monsanto is hence shielded by the provisions of § 109.

The plaintiffs have made an attempt to avoid the effect of § 109 by other challenges to its applicability. They also argue some procedural errors in the trial court proceedings. In view of our conclusion, none of these issues need be discussed.

The trial court's judgment is *reversed* and the cause *remanded* for further proceedings not inconsistent with this opinion.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, WILSON, KAUGER and SUMMERS, JJ., concur.