Charles BALL, Plaintiff,

v.

**HARNISCHFEGER CORPORATION,**
Defendant.

No. 81292.

Supreme Court of Oklahoma.

June 14, 1994.

Micky Walsh, Elizabeth J. Sloan, Durbin, Larimore & Bialick, Oklahoma City, for plaintiff.

Bert M. Jones, Rhodes, Hieronymus, Jones, Tucker and Gable, Tulsa, for defendant.

SUMMERS, Justice.

The Honorable Frank H. Seay, judge of the United States District Court for the Eastern District of Oklahoma, pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 § 1601–1611, has certified the following question to this Court:

> Do the provisions of Oklahoma's statute of repose, Okla.Stat. tit. 12, § 109, apply to the manufacturer of a product, which upon installation is determined to be an improvement to real property?

We answer by stating that a manufacturer is protected if the suit is based on the manufacturer's performance of one of the activities set forth in 12 O.S.1991 § 109.

Charles Ball was injured when he fell from an overhead crane while working at the Johnston Terminal at the Port of Muskogee. He brought suit against the manufacturer of the crane, Harnischfeger Corporation, based on manufacturers products liability. Harnischfeger asserted that the statute of repose barred the action because the crane had been

in place for more than ten years. Judge Seay determined that there was no Oklahoma precedent on this issue, and certified the question to us, noting that our decision will likely govern the outcome of the case.

The crane was designed and manufactured by Harnischfeger in 1972 to fit specifications set by Willbros, the predecessor in interest of Johnston Terminal. The crane was designed to meet certain specifications necessary for the operation of the terminal. It lifts and moves steel beams to and from barges, rail cars, and trucks. The crane was shipped to Willbros, and reassembled on site. A representative of Harnischfeger inspected the assembly of the crane and monitored it in operation.

The crane is a stationary part of the terminal. It is a five motor electric traveling overhead crane consisting of a bridge, two trolleys, each with one hoist, a service platform and an operator's cab. This crane bridge, a design unique to this crane, consists of two parallel welded steel box girders which span the width between the crane and runway girders. At each end of the bridge is a truck which rides on the rails on top of the crane runway girders. The girders are supported by columns set in the ground on foundations to support the weight of the crane and its load. The operator's cab is attached to one end of the bridge. The trolleys are wheeled vehicles which ride on the rails atop each parallel girder of the bridge. Each trolley has the hoist machinery, the wire rope and the hook with which loads are attached and hoisted. Ball was attempting to grease the wheels of the trolley when he fell. The federal District Court found that the crane had been in place for more than ten years and was an improvement to real property.

Section 109 reads as follows:

No action in tort to recover damages

(i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,

(ii) for injury to property, real or personal, arising out of any such deficiency, or

(iii) for injury to the person or for wrongful death arising out of any such deficiency,

shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such improvement more than ten (10) years after substantial completion of such an improvement.

In recent years we have been called on to evaluate Section 109 several times. In *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 782 P.2d 915 (Okla.1989), we were faced with the question of the statute's validity in light of a variety of challenges made pursuant to the Oklahoma constitution. We held it to be constitutional. Later in *Riley v. Brown & Root, Inc.,* 836 P.2d 1298 (Okla.1992), we upheld it against another constitutional challenge. In *Mooney v. Young Mens Christian Association of Greater Tulsa,* 849 P.2d 414, 416 (Okla.1993), we applied the statute of repose to the manufacturer of an elevator, and held that the plaintiff's claims of negligent installation of the elevator were barred. But in that case the issue of whether § 109 applied to a manufacturer was not raised by the parties nor addressed by us.

This, then, is the first occasion on which this question has been posed directly to this Court.[1] Ball asserts that Section 109's bar does not shield a manufacturer from liability because the statute was only intended to protect building professionals such as architects and engineers. As support for this argument, Ball notes that this Court has referred to the statute as one protecting "architects and engineers." *Riley,* 836 P.2d at 1299.

On the other hand, Harnischfeger urges that the manufacturer of a product which is unique to the location *and* is an improvement to real property is within the statute's protection. Harnischfeger points out that the statute expressly protects certain activities,

---

1. We expressly reserved the question in *Smith v. Westinghouse Electric Corp.,* 732 P.2d 466, 467 n.

3 (Okla.1987) and *St. Paul,* 782 P.2d at 922 n. 6.

such as designing, constructing, planning and supervising construction. Citing to cases from other jurisdictions, Harnischfeger asserts that a manufacturer can be included within the protection of the statute of repose if the manufacturer is acting in one the capacities enumerated by the statute.

Only a few jurisdictions have adopted a *per se* rule which excludes manufacturers from protection under statutes of repose. In the cases reaching this result, the courts have reasoned that the statutes of repose were enacted to protect individuals whose livelihood is based on the uniqueness and creativity of a design. Unlike a manufacturer of massed-produced goods who can use quality controls to assure the safeness of the product, individuals engaged in the activities of designing, planning, constructing and supervising construction do not have such protection. Thus, lobbying forces convinced state legislatures to enact legislation to protect certain activities to avoid years and years of possible liability:

> In the mid 1960's, faced with what they considered to be an intolerable situation, architects, engineers, and builders, through their respective professional organizations, began a drive to alleviate the undesirable consequences of [the elimination of privity as requisite to suit]. The American Institute of Architects ... along with the National Society of Professional Engineers and the Associated General

Contractors, began to push for model legislation which would substantially curtail the limitless duration of liability imposed upon its members. In the span of approximately two years, 1965–1967, thirty jurisdictions ... enacted or amended statutes of limitations specifically for architects, engineers, and builders.

*In re Beverly Hills Fire Litigation,* 672 S.W.2d 922, 925 (Ky.1984), quoting note, *Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers, and Builders,* 60 Ky.L.J. 462, 464 (1971). Relying on this as a statement of intent behind the enactment of the statutes of repose, a few jurisdictions held that a manufacturer was not protected. Furthermore, some courts felt that the inclusion of manufacturers within the protected group would have a detrimental, or at the least confusing, effect on the law of products liability.[2]

A majority of the states which have addressed this issue have reached a different result. Rather than focusing on the *status* of the party (such as an engineer, manufacturer or architect), their trend is to focus on the *activity* involved, to determine whether the manufacturer was acting as a designer, planner, supervisor or constructor of an improvement to real property. If the manufacturer is involved in one of the enumerated activities, protection will be extended.[3] If the

**2.** *In re Beverly Hills Fire Litigation,* 672 S.W.2d 922 (Ky.1984); *Baker v. Walker & Walker,* 133 Cal.App.3d 746, 184 Cal.Rptr. 245 (1982). In *Condit v. Lewis Refrigeration Co.,* 101 Wash.2d 106, 676 P.2d 466 (1984), the Washington Supreme Court indicated that manufacturers were not within the protection of the statute. However, the court continued by stating that those involved in installing mechanical systems, such as heating, air conditioning, electrical and plumbing systems, were within the protection provided by the statute of repose.

**3.** *Colorado, Anderson v. M.W. Kellogg Co.,* 766 P.2d 637 (Colo.1988) (manufacturer of a conveyor connecting two buildings was protected under the statute of repose) and *Stanske v. Wazee Elec. Co.,* 722 P.2d 402 (Colo.1986) (manufacturer of an electrical switch in a grain elevator was protected under statute); *Georgia, Northbrook Excess & Surp. Ins. Co. v. J.G. Wilson Corp.,* 250 Ga. 691, 300 S.E.2d 507 (1983) (manufacturer of fire doors was protected under statute of repose be-

cause the fire doors were made to meet certain specifications unique to a particular building); *Idaho, West v. El Paso Products Co.,* 122 Idaho 133, 832 P.2d 306 (1992) (manufacturer of a switch in a granular was protected under the statute of repose); *Illinois, Hausman v. Monuich Mach. Tool Co.,* 997 F.2d 351 (7th Cir.1993) (manufacturer of anneal line was protected by statute because it was built to specification of the contractors), *Herriott v. Allied Signal Inc.,* 998 F.2d 487 (7th Cir.1993) (manufacturer of larry-cars was protected by statute of repose because the cars were designed for and built to specifications required by the building contractor), *Witham v. Whiting Corp.,* 975 F.2d 1342 (7th Cir. 1992) (crane manufacturer was protected even though not involved in the installation because the crane was of unique design and the manufacturer inspected the crane after installation), *State Farm Mutual Auto. Ins. v. W.R. Grace & Co.,* 834 F.Supp. 1052 (C.D.Ill.1993); *Massachusetts, Snow v. Harnischfeger Corp.,* 12 F.3d 1154 (1st Cir.1994) (overhead crane manufacturer was

manufacturer acted only as a supplier, protection is denied.[4]

For example, in *Snow v. Harnischfeger Corp.*, 12 F.3d 1154 (1st Cir.1994), the First Circuit Court of Appeals was presented with the same issue regarding the same product, an overhead crane. There, the crane was made to the specifications of the engineering firm and was installed in the building to move trash into trash feed hoppers. As in our case, the cranes were incorporated into the plant's buildings as part of the construction.

The court stated that "Harnischfeger may be a protected actor even without being involved in the construction business", because the statute did not, by its express language, limit its protection to those in the construction business. Rather, the statute protected those who designed, planned, constructed or

protected by statute because the crane was made to meet the criteria of the designing engineers), *Cournoyer v. Mass. Bay Transp. Auth.*, 744 F.2d 208 (1st Cir.1984) (manufacturer of steel building was protected because the design of the building was at issue); *Michigan, Matthews v. Beloit Corp.*, 807 F.Supp. 1289 (W.D.Mich.1992) (manufacturer of stack calendar machine was protected by state of repose because the manufacturer qualified as a contractor under the statute); *Missouri, Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822 (Mo.1992) (question of fact existed as to whether the manufacturer of highway platform and ramp was involved in the design of the ramp so as to fall within the statute of repose); *New Jersey, Wayne Township Bd. of Education v. Strand Century Inc.*, 172 N.J.Super. 296, 411 A.2d 1161 (1980) (it was a question of fact as to whether the manufacturer of a dimmer panel was included within the statute of repose); *New Mexico, Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (Ct.App.1977) (manufacturer of a glass window in an airport was protected against suit for acting in the capacity of designer); *Ohio, Adair v. Koppers Co.*, 741 F.2d 111 (6th Cir.1984) (manufacturer of coal-handling conveyor was protected by the repose statute because the conveyor was designed, installed and constructed by the manufacturer); *Pennsylvania, Beaver v. Dansk Industri Syndicat*, 838 F.Supp. 206 (E.D.Pa.1993) (manufacturer of molding machine was protected under the repose statute because the manufacturer acted in the capacity of an installer), *Homrighausen v. Westinghouse Elec. Corp.*, 832 F.Supp. 903 (E.D.PA.1993) (escalator manufacturer was protected under the statute because the escalator was designed and construction for the particular building), *Gnall v. Illinois Water Treatment Co.*, 640 F.Supp. 815 (M.D.Pa.1986) (manufacturer of a tank in a water treatment plant was protected because the tank was designed for the particular plant); *McCormick v. Columbus Conveyor Co.*, 522 Pa. 520, 564 A.2d 907 (1989) (manufacturer of conveyor belt was protected because the actions were more than a mere supplier), *Schmoyer v. Mexico Forge Inc.*, 423 Pa.Super. 593, 621 A.2d 692 (1993) (merry-go-round manufacturer was protected because was acting in capacity enumerated in the statute), *Fetterhoff v. Fetterhoff*, 354 Pa.Super. 438, 512 A.2d 30 (1986) (elevator manufacturer was protected because installed the elevator); *Texas, Barnes v. Westinghouse Elec. Corp.*, 962 F.2d 513 (5th Cir.1992) *cert. denied,* — U.S. —, 113 S.Ct. 600, 121 L.Ed.2d 536 (1992) (manufacturer of an electrical bus duct was entitled to protection because the product was designed specifically for the building), *Dedmon v. Stewart–Warner Corp.*, 950 F.2d. 244 (5th Cir.1992) (manufacturer of furnace was protected because it designed and assembled the furnace).

4. *Arkansas, Brown v. Overhead Door Corp.*, 843 F.Supp. 482 (W.D.Ark.1994) (no protection under statute of repose to a manufacturer of garage door openers because the manufacturer was not involved with the installation of the product or the design of the improvement to real property); *Illinois, Landry v. Keene Corp.*, 811 F.Supp. 367 (N.D.Ill.1993) (manufacturer of asbestos-containing fire-proofing was not protected by the statute of repose because the material was mass-produced and not specifically designed for the particular improvement); *Massachusetts, Dighton v. Fed. Pac. Elec. Co.*, 399 Mass. 687, 506 N.E.2d 509 (1987) *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987) (manufacturer of circuit breaker panel was not protected because the manufacturer did not provide individualized expertise or designing a product unique to a particular building); *Montana, Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647 (1976) (manufacturer of whirlpool bath was not covered by the statute of repose because the actions were only that of a supplier rather than a designer or installer); *North Dakota, Herron Public School Dist. v. United States Gypsum Co.*, 475 N.W.2d 120 (N.D.1991) (manufacturer of ceiling tiles was not protected by the statue because the manufacturer did not perform any of the statutorily-enumerated functions such as design or installation); *Pennsylvania, McConnaughey v. Bldg. Components Inc.*, — Pa. —, 637 A.2d 1331 (1994) (manufacturer of preconstructed roof trusses was not protected because the manufacturer acted only in the capacity of marketer and supplier); and *Ferricks v. Ryan Homes, Inc.*, 396 Pa.Super. 132, 578 A.2d 441 (1990) (manufacturer of plywood was not covered by the statute of repose because was only a supplier of materials used in construction); *Texas, Corbally v. W.R. Grace & Co.*, 993 F.2d 492 (5th Cir.1993) (manufacturer of asbestos fire-proofing material was not protected by the statute because the manufacturer did not act in one of the enumerated capacities).

administered the construction. Harnischfeger pointed out that its cranes were unique in design, and manufactured to meet the unique specifications presented by each new building. Relying on this, the court stated that the relevant inquiry "involves the motivation behind and the activity of producing the product, not the product itself." *Id.* at 1158.

The court noted that the cranes were not mass-produced in a manner so as to make the manufacturer a mere supplier of goods:

> The purpose of the statute is 'to protect providers of 'individual expertise' who 'render particularized services for the design and construction of particular improvements to particular pieces of real property.' The statute does not name a class of protected actors, but instead extends protection to 'those who commit' any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property." ... A party is not a protected actor when the party does not perform protected acts. Conversely, an actor such as a manufacturer or supplier may be protected if that actor becomes more than a 'mere' supplier by engaging in protected activities.

(Citations omitted) *Id.* at 1159, quoting *Dighton v. Fed. Pac. Elec. Co.*, 399 Mass. 687, 506 N.E.2d 509, 515 (1987) and *McDonough v. Marr Scaffolding Co.*, 412 Mass. 636, 591 N.E.2d 1079, 1082 (1992).

In *Witham v. Whiting Corp.*, 975 F.2d 1342 (7th Cir.1992), the Seventh Circuit faced a similar issue involving an overhead crane. Interpreting the Illinois statute of repose, the court held that the crane was an improvement to real property, and that the manufacturer of the crane was shielded from liability by the statute of repose. The crane was similar to the one in the present case; it was made to the specifications of the engineering firm and was installed as part of the construction of the building. In reaching its decision the court relied primarily on the fact that the manufacturer was not producing a product in mass quantities, but was designing a product to fit a particular need in the construction of a building.

In *McCormick v. Columbus Conveyor Co.*, 522 Pa. 520, 564 A.2d 907 (1989), the Pennsylvania Supreme Court reached a similar conclusion with regard to the manufacturer of a conveyor belt. The conveyor belt was part of a coal delivery system which was an integral part of the building. The court noted that the "statute identifies its class not by the status or occupation of its members but rather by the contribution or acts done in relation to the improvement to the real property." *Id.* 564 A.2d at 901 quoting *Leach v. Philadelphia Savings Fund Society*, 234 Pa.Super. 486, 340 A.2d 491 (1975). As for the conveyor belt, the court reasoned that the manufacturer was indeed covered by the statute of repose:

> It is abundantly clear from the record that Columbus did more than supply a standard piece of equipment, indistinguishable from any other it mass-produced, that by chance became affixed to the University's property. Using specifications and a general layout provided by Rust Engineering, Columbus devised a coal delivery system to be integrated into the construction of the new power plant that was uniquely suited to that site.

*Id.* 564 A.2d at 910. Thus the manufacturer was acting in a capacity covered by the statute. Activity, not status, was held to control, and the manufacturer was protected.

The New Jersey Superior Court has further refined this idea. In *Wayne Township Board of Educ. v. Strand Century, Inc.*, 172 N.J.Super. 296, 411 A.2d 1161, 1164 (1980), the court was faced with the question of whether the manufacturer of a dimmer panel in an auditorium was protected by the statute of repose. The dimmer panel was an integral part of the permanent electrical system. The court stated that the statute was not intended to "benefit manufacturers and sellers of products who were uninvolved in the design, planning and construction of the improvements to real estate." *Id.* 411 A.2d at 1164. Product design was not enough to trigger the statute; the manufacturer must be involved in the designing or construction of the improvement to real estate, or of an integral component part of the improvement. The manufacturer was not protected.

■ The statute of repose was not intended to cover products which are pre-fabricated in mass quantities and sold for the construction of the improvement. *Ferricks v. Ryan Homes, Inc.*, 396 Pa.Super. 132, 578 A.2d 441 (1990), illustrates this point. There a homeowner brought suit for personal injuries resulting from formaldehyde vapors. The vapors came from the plywood used in the construction of the home. The court held that the manufacturer was not protected by the statute of repose, because the manufacturer did not construct or design an improvement. It merely furnished construction materials. The plywood was a component part of the improvement, but was not made to meet any particular specifications or criteria unique to the house. It was mass-produced and introduced into the market place, each product being practically identical.

One federal District Court has interpreted Oklahoma law in a similar fashion. In *Uricam Corp. v. W.R. Grace & Co.*, 739 F.Supp. 1493 (W.D.Okla.1990), the Court was confronted with whether a manufacturer of asbestos fire-proofing was protected under Section 109. The Court refused to extend protection, relying on our prior decisions. The Court held that the statute was meant to shield from liability building professionals, but not mere manufacturers or suppliers. *Id.* at 1496.

■ We agree with *Uricam* to the extent that it holds that a mere manufacturer is not protected by our Section 109. However, we also agree with the reasoning of the majority of jurisdictions that the title of "manufacturer" does not automatically preclude protection. Instead, the activity performed by the manufacturer must be considered. If the manufacturer was acting as a designer, planner, construction supervisor or observer, or constructor, the statute of repose will apply. It is the specialized expertise and rendition of particularized design which separates those protected from mere manufacturers and suppliers. Had the state legislature intended otherwise, it would have defined the protected persons by occupation rather than by activity.

We do not intend to interfere with the law of products liability in so holding. A manufacturer of a mass-produced product can still be liable for a defective product. It is only under the limited circumstances described here that a manufacturer is protected under Section 109. In *Herriott v. Allied Signal, Inc.*, 998 F.2d 487, 491 (7th Cir.1993), the Seventh Circuit recognized that there was tension between these statutes of repose and the law of products liability. However, the Court reasoned that the statute must necessarily include manufacturers under some circumstances. The overlap of the two will only occur in a narrow line of cases.

In our case the federal court has not certified as fact the theory under which Harnischfeger was sued. The complaint shows that Ball sued for defective design and manufacture.[5] The federal court stated that Harnischfeger designed the crane to meet specifications set out by the building's owner, and furnished a representative to observe installation of the crane. From this, it is clear to us that Harnischfeger acted as designer of the crane. The crane was not a standardized product, but was customized to meet the unique needs of the building. Section 109's protection is available.[6]

Certified question answered.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

OPALA and KAUGER, JJ., concur in part; dissent in part.

5. Plaintiff's brief, and the original complaint, states his lawsuit alleges that the crane "was defective in design and manufacture."

6. In *Mooney, supra,* we held that a manufacturer was protected under Section 109 for certain activities, but might be liable for activities not covered by the statute. There we held that the manufacturer of the elevator could not be sued in its capacity as designer, but could be held responsible for its actions regarding the maintenance of the elevator.