2012 OK CIV APP 97

**Eloise E. OLSEN, individually and as Personal Representative for the Estate of Billy W. Olsen, Deceased, Plaintiff/Appellant,**

**v.**

**OKLAHOMA GAS AND ELECTRIC CO., Defendant/Appellee,**

and

**Georgia Pacific, LLC; and Union Carbide Corporation, Defendants.**

**No. 110,104.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 7, 2012.

Steven T. Horton, Brent L. Neighbors, Horton & Neighbors, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Roberta Browning Fields, McAfee & Taft, a P.C., Oklahoma City, Oklahoma, for Defendant/Appellee.

KEITH RAPP, Judge.

¶ 1 The plaintiff, Eloise E. Olsen (Olsen), Individually and as Personal Representative of the Estate of Billy W. Olsen (Mr. Olsen), deceased, appeals an Order granting summary judgment to the defendant, Oklahoma Gas and Electric Company (OG & E). The plaintiff sued two other defendants, Georgia Pacific, LLC and Union Carbide Corporation, but the summary judgment order also contains an Order pursuant to 12 O.S.2011, § 994(A). The appeal proceeds under the procedures of Okla. Sup.Ct. Rule 1.36, 12 O.S.2011, ch. 15, app. 1. This Court reverses the Order granting summary judgment and remands the cause for further proceedings.

## BACKGROUND [1]

¶ 2 In 1970, OG & E constructed an electric power generating plant, using an engi-

---

1. The motion for summary judgment, the response to that motion, and the reply were filed under seal in the trial court. By Protective Order, the trial court approved the parties' Confidentiality and Non–Disclosure Agreement (Agreement). The Clerk **did not certify** the three filings, the Protective Order and the Agreement as part of the appellate record. Record, Tab 1. The motion, response and reply were filed in this Court also under seal.

The parties' Agreement specifies, in paragraph 4.2, who may receive the information. Pursuant to the parties' Agreement, there is a restriction on availability to court personnel, which restriction does not include the appellate court or its personnel. The parties have not amended their Agreement to authorize appellate court personnel to view the sealed record.

Authority and writings exist that discuss the process by which materials may be sealed, both in the trial court and the appellate court. *See* 12 O.S.2011, § 3226(C); Harvey D. Ellis, Jr., Clyde A. Muchmore, 5 Okla. Prac., Appellate Practice, § 19:6 (2011). California practice appears to authorize a court to unseal a record on its own motion, after notice to the parties. B.E. Wilkin,

2 Wilkin Cal. Prac. 5th, § 44 (2008). However, this does not resolve court personnel responsibilities. Moreover, these materials do not resolve the case, as here, where the parties have agreed regarding the scope of disclosure and limited the disclosure for court personnel.

In addition, the subject filings have not been certified by the court clerk. In an accelerated appeal, the record is to be certified as "true and correct" copies of the original filed record. Okla. Sup.Ct. Rule, 1.36(d), 12 O.S.2011, ch. 15, app. 1. Unlike non-accelerated appeals, the District Court Record in the appellate court consists of certified copies and not the originals. Thus, it is doubtful that this Court may consider material not included within the District Court Clerk's certificate. *See City of Lawton v. International Union of Police Associations, Local 24,* 2002 OK 1, 41 P.3d 371 n. 15 ("Neither this court nor the Court of Civil Appeals may consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court.")

Therefore, the Background of this action, for purposes of review, is taken from the parties' briefs, the Briefs, the summary judgment hearing

neering and construction firm as general contractor. Mr. Olsen worked for an insulation contractor hired by OG & E. He installed asbestos insulation on pipes. OG & E paid for the asbestos insulation under an agreement so as to avoid sales tax.

¶ 3 Mr. Olsen was diagnosed with pleural mesothelioma after working with the asbestos and died from that disease in November 2010. His surviving spouse, Olsen, brought this action alleging that exposure to asbestos caused the death. The petition proceeded on two theories.

¶ 4 The first theory claimed that OG & E was liable under the theory of premises liability because of the asbestos and asbestos-containing products. The allegations listed a series of breaches of duty from failure to warn to failure to maintain safe working environment premises.

¶ 5 The second theory alleged negligence. Olsen alleged that OG & E, as supplier of the asbestos products, was negligent for not warning of the hazards or making the workplace safe.

¶ 6 OG & E filed a motion for summary judgment which relied upon the statute of repose, 12 O.S.2011, § 109.[2] OG & E argued that Section 109 bars all tort claims of any type based upon any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property, or death or injury arising out of such alleged deficiency.

¶ 7 Olsen responded that Section 109 did not apply because the insulation work that decedent performed did not constitute "an improvement to real property" until the insulated pipe was actually installed. Olsen argued that Mr. Olsen experienced pre-installation exposure because the asbestos insulation was wrapped or joined with the pipe prior to installation of the pipe into the power plant system.[3] Olsen further distinguished her claims of premises liability and negligence from supplying asbestos without warning as not governed by Section 109. Olsen specifically disclaimed a theory of liability based upon "deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property."

¶ 8 The trial court granted summary judgment to OG & E. The court concluded that Olsen's claims all "tie back" to the construction of the power plant. Thus, the claims of premises liability and negligence were deemed to be indistinguishable from a claim of a "deficiency either in design, planning, or construction of an improvement to real property."[4]

¶ 9 Olsen appeals.

## STANDARD OF REVIEW

¶ 10 This appeal, in part, involves the interpretation of 12 O.S.2011, § 109. Matters involving legislative intent present questions of law, which are examined independently and without deference to the trial

transcript, and court records not under seal. This Court finds that this sufficiently frames the factual background for the legal issues presented in this appeal and the unsealing of the subject filings and return for certification by the District Court Clerk, is not required.

2. Section 109 is a statute of repose. *Samuel Roberts Noble Foundation, Inc. v. Vick,* 1992 OK 140, ¶ 18, 840 P.2d 619, 624. Section 109 provides:

No action in tort to recover damages
(i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
(ii) for injury to property, real or personal, arising out of any such deficiency, or
(iii) for injury to the person or for wrongful death arising out of any such deficiency,

shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

Ownership was not an issue and the insulated pipe was situated on OG & E's property. Olsen did not assert that the insulated pipe retained its character as personal property *after* installation.

3. Olsen conceded that some exposure occurred after installation, but characterized that as minimal. Olsen does not maintain that Mr. Olsen was engaged in repairs, so the distinction noted in *Lee v. Phillips & Lomax Agency, Inc.,* 2000 OK 65, 11 P.3d 632, does not apply.

4. Hearing on summary judgment motion. Record, Tab 4, pp. 43–45.

court's ruling. *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

¶ 11 The appellate standard of review in summary judgment is *de novo*. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party and the moving party is entitled to judgment as a matter of law. 12 O.S.2011, § 2056(C); Rule 13, Rules For District Courts, 12 O.S.2011, ch. 2, app.; *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 1996 OK CIV APP 92, 929 P.2d 288. When the defendant is the moving party and relies upon an affirmative defense, as OG & E has with its Section 109 affirmative defense, then the defendant, as the party with the burden of proof, must meet the same standards as a plaintiff movant.[5] *Akin v. Missouri Pacific Railroad Co.*, 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044.

## ANALYSIS AND REVIEW

### Applicability of 12 O.S.2011, § 109.

¶ 12 Notwithstanding Olsen's disclaimers, the trial court deemed the action as one coming within the scope of Section 109. After ten years, Section 109(i) bars any tort action for injury or wrongful death arising from "deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property." Therefore, this Court's analysis first addresses whether Section 109 bars Olsen's action, assuming that the trial court correctly characterized the action as one described in Section 109, notwithstanding Olsen's disclaimer of any action for a deficiency causing Mr. Olsen's death.

¶ 13 The elements of the Section 109 bar applicable here are: (1) a tort action; (2) for wrongful death which arises out of a de-scribed deficiency; (3) which described deficiency involves an improvement to real property; (4) the defendant, here the owner, is a member of a described class; and (5) ten years has passed since substantial completion. The intent of Section 109 is that persons who own, lease or possess property which has been altered by construction shall not be liable for planning, design, and construction defects in the construction improvement more than ten years after "substantial completion."[6] *Gorton v. Mashburn*, 1999 OK 100, ¶ 8, 995 P.2d 1114, 1116. Without dispute, the elements (1), (4) and (5) are present.

¶ 14 Olsen pled a claim for relief on the theories of premises liability and negligent supply of asbestos. Olsen's premises liability claim is that OG & E had a duty to warn about hazards on its premises and prevent injury from hazards on its premises. The hazard here was asbestos and asbestos products. Section 109 does not operate to bar a premises liability claim. *Smedsrud v. Powell*, 2002 OK 87, ¶ 21, 61 P.3d 891, 898–99; *Abbott v. Wells*, 2000 OK 75, 11 P.3d 1247. The reasoning of these cases would also make Section 109 inapplicable to the negligent supply of asbestos, without warning, claim.

¶ 15 The trial court distinguished *Smedsrud* and *Abbott* and reasoned that Mr. Olsen's injury occurred during construction of an improvement to real property.[7] The trial court concluded that the claim necessarily arose from a deficiency in the design, planning or construction of an improvement to real property. Therefore, the trial court applied Section 109 and sustained OG & E's motion for summary judgment. Moreover, the trial court necessarily determined that Olsen did not present any alternative theory, because *Smedsrud* also instructs that a plaintiff cannot be forced to abandon an alternative theory.

---

5. Matters of avoidance are affirmative defenses, 12 O.S.2011, § 2008(C)(20), as is the kindred Statute of Limitations, 12 O.S.2011, § 2008(C)(18).

6. This Court interprets the phrase "after substantial completion" to be the defining moment when the ten year period commences. Here, Olsen does not dispute the fact that ten years have elapsed since the exposure to asbestos or the principle that Section 109 is a statute of repose.

7. Hearing on summary judgment motion. Record, Tab 4, p. 44.

¶ 16 *Smedsrud* and *Abbott* share a distinguishing fact. In both cases, the injured party was a person coming onto the premises as invitees long after construction was completed. They had nothing to do with the construction of the item involved in the injury. Thus, these cases do not answer the question of whether Mr. Olsen's injury arose out of a deficiency in the construction, or the design, planning, supervision or observation of construction of the OG & E facility.[8] The components of this aspect of the inquiry are "arising out of" and a defined deficiency.

■ ¶ 17 Here, Mr. Olsen was actively engaged in construction prior to its installation into the power plant while utilizing the offending material. In the analogous cases of workers compensation and insurance, before an injury can be found to have arisen out of the employment, there must be apparent to a rational mind, upon consideration of all circumstances, a causal connection between conditions under which work was required to be performed and resulting injury. *Norton v. E.A. Cowen Const. Co.*, 1964 OK 91, 391 P.2d 785. "Arising out of" does not equate to proximate cause—at least in coverage provisions—it does require some level of causation greater than coincidence. *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 539 (Fla.2005) ("The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with'"). Clearly, Mr. Olsen's injury arose out of his work with the asbestos and asbestos products. Thus, the "arising out of" component of Section 109 is present.

■ ¶ 18 However, the fact that the injury arose out of construction does not end the inquiry. The final component of Section 109 requires that the design, planning, supervision or observation of construction or construction specifically involve "an improvement to real property." Olsen points to the fact that Mr. Olsen, with minor exceptions, affixed and installed the asbestos and asbestos products to pipes prior to installation of the pipes into the facility. Olsen argued that the asbestos and the pipes being insulated were not part of the real property when Mr. Olsen performed his tasks.

¶ 19 Three decisions from other jurisdictions conclude that asbestos is not an improvement to real property until it is applied to a component of the facility and installed.

¶ 20 In *White v. CBS Corp. f/k/a Westinghouse Electric Corp.*, 996 S.W.2d 920 (Tex. App.1999), White alleged that her husband was exposed to asbestos causing his death. For purposes of summary judgment, Mr. White was exposed to asbestos in the course of his work at two power plants. He assisted with the installation of turbines.[9] Pipes associated with the turbines received asbestos insulation and asbestos insulation would be placed in the turbines, similarly to what transpired with Mr. Olsen.

¶ 21 In material respects, the Texas statute parallels Section 109.[10] The Texas Court held:

> "There can be no such thing as an improvement *until* personalty is annexed to realty.". . . .

Because the summary judgment "evidence" suggests that Mr. White's alleged exposure to the asbestos occurred when the asbestos was yet a chattel or contained within a chattel . . . it cannot be said that

---

**8.** "Construction" is defined as the fabrication; the act of putting together or combining parts to form an object. Black's Law Dictionary 308 (7th Ed. 1999); Webster's Third International Dictionary 489 (1961).

**9.** Westinghouse constructed the power plants. The turbines were intended to and did become affixed to the real property. *White*, 996 S.W.2d at 924.

**10.** The statute applicable in *White* provided in part:

(a) A claimant must bring suit for damages for (injury or wrongful death) against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property, or deficiency in the construction or repair of the improvement.
Tex. Civ. Prac. & Rem.Code, § 16.009 (1986).

White's actions are barred by the statute as a matter of law.

*White*, 996 S.W.2d at 924–25 (citations omitted).

¶ 22 In *Corbally v. W.R. Grace & Co.*, 993 F.2d 492 (5th Cir.1993), the plaintiffs sued the asbestos manufacturer to recover costs associated with removal of the asbestos from plaintiffs' property. The Court declined to apply the Texas statute because the asbestos was a component of the improvement, but not the entire improvement.

¶ 23 Workers exposed to asbestos and claiming illness sued the manufacturer, Celotex Corporation, in the case of *Willis v. Raymark Industries, Inc.*, 905 F.2d 793 (4th Cir.1990). Celotex supplied asbestos insulation to the employee's employer and the employees handled the materials as insulators. The law of Virginia applied. Virginia had a five-year statute of repose protecting persons engaged in the design or construction of buildings from actions "arising out of the defective and unsafe condition of an improvement to real property." [11]

¶ 24 The trial court declined to apply the statute to asbestos not already installed and the Circuit Court affirmed. The Court held that the statute would not apply because the exposure "occurred prior to the point at which the insulation products were incorporated into the realty." [12] *Willis*, 905 F.2d at 797–98.

¶ 25 The Court in *Buttz v. Owens–Corning Fiberglas Corp.*, 557 N.W.2d 90 (Iowa 1996), also rejected application of that state's statute of repose in an asbestos case. The workers there were exposed during the phase of application of the asbestos to pipes as insulation.

¶ 26 No Oklahoma cases have been decided where, during initial construction of a power plant, the plaintiff is exposed to asbestos insulation applied to piping before the piping is installed into the power plant so as to unquestionably become part of the real estate. The task for this Court then is to discern whether *White*, *Willis* and *Buttz* will be followed in this jurisdiction.

¶ 27 In *Smith v. Westinghouse Elec. Corp.*, 1987 OK 3, 732 P.2d 466, the issue was whether an exploding transformer was an "improvement to real property." Although PSO owned the transformer, it was installed on property not belonging to PSO.

¶ 28 Under the facts of the case, and by application of the *ad valorem* tax code, the Court ruled that the transformer retained its character as personal property. In footnote 12, the Court stated, "We leave unsettled by this opinion the question whether a § 109 'improvement to real property' must always meet our statutory definition of real property." [13] *Smith*, 1987 OK 3, 732 P.2d at 469 n. 12.

¶ 29 A close reading of the *Smith* Court's analysis discloses that when an item is constructed on an owner's property, then the function of the item, its performance, its enhancement of the value of the owner's property, and "commonsense" interpretation of what an improvement is, or is not, enter into the mix of factors to consider when deciding the issue. *Smith*, 1987 OK 3 at ¶¶ 6–7, 732 P.2d at 468–69.

¶ 30 The *Smith* Court reviewed the case of *Mullis v. Southern Co. Services, Inc.*, 250 Ga.

11. Va.Code Ann. § 8.01–250 (1977), in part, reads:
    No action to recover ... for injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property ... shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.

12. *Harder v. ACandS*, 179 F.3d 609 (8th Cir. 1999), is distinguished because the asbestos had been installed as part of the real property and then removed for repairs when the exposure occurred. The Court applied the statute of repose to deny the claim, effectively ruling that the asbestos there did not lose its character as an improvement to real property.

13. Here, the Record of the facts does not involve the factor where the offending item is, or is not, treated as personal property for tax purposes. *See Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249 (10th Cir.2005) (interpreting Oklahoma law); *Kirby v. Jean's Plumbing Heat & Air*, 2009 OK 65, ¶ 12, 222 P.3d 21, 26.

90, 296 S.E.2d 579 (1982), where the Georgia statute was substantially the same as Section 109. The injury in *Mullis* occurred when Mullis worked on a circuit breaker. The circuit breaker, as part of the electrical system, had been installed several years before, so that the action would be barred if the circuit breaker was an improvement to real property. The Georgia Supreme Court applied a three-prong test for assessing what constitutes an improvement to real property; namely, (1) the permanence of the improvement, (2) the degree to which the improvement enhances the value of the realty, and (3) the intention of the parties to make the improvement one to the realty. *Id.* at 583.

¶ 31 Without specifically adopting use of the factors or applying them, *Smith* gave tacit approval to the *Mullis* factors. "While this may be a correct conceptual approach when the injury for which recovery is sought occurs on the public utility's property, it is not persuasive where, as here, the harm is dealt by an instrumentality located on property *serviced* by the public utility." *Smith,* 1987 OK 3 at ¶ 7, 732 P.2d at 469.

¶ 32 However, the injuries in *Smith* and *Mullis* occurred at a time subsequent to construction and not as a part of the construction activities. In *Smith,* the injurious material inside the transformer and the transformer, were in place prior to the explosion. Likewise, in *Mullis,* the electrical system had been installed years prior to the injury. Here, the asbestos-insulated pipes had not been incorporated into an improvement on real property when Mr. Olsen was exposed while insulating pipes.

¶ 33 In *Ball v. Harnischfeger Corp.,* 1994 OK 65, 877 P.2d 45, the Court was asked to answer whether Section 109 applies to the manufacturer of a product, which upon installation is determined to be an improvement to real property. The Court ruled that the focus was to be upon the activity of the defendant rather that the defendant's status. *Id.,* 1994 OK 65 at ¶ 18, 877 P.2d at 50.

¶ 34 In *Ball,* the facts were that the offending crane was already installed as an improvement to real property. Ball was injured after the crane was installed and did not participate in the installation.

¶ 35 The Court held that if the activity was one designated by Section 109, then Section 109 would apply to bar actions after ten years. Upon finding that Ball sued for defective design and manufacture, the Court applied Section 109, while noting that a products liability action would normally not fall under Section 109.

¶ 36 The Tenth Circuit reviewed and applied the *Smith* case in *Durham v. Herbert Olbrich GMBH & Co.,* 404 F.3d 1249 (10th Cir.2005). Durham sustained injury when he became entangled in a production line. The production line was installed more than ten years prior and was bolted to the floor, but was taxed as personal property. The issue for the Court was whether the production line was an improvement to real property so that Section 109 would apply as a bar to the action.

¶ 37 The Court ruled that the production line was not an improvement to real property. The Court weighed several factors, including the tax treatment of the production line as personal property. *Durham,* 404 F.3d at 1255–56.[14] In addition, the Court examined ownership, permanence of the improvement, whether there was an intention to make the production line an improvement to realty, and the degree to which the production line enhanced the value of the property. In the end, the Court gave emphasis to the tax status.

¶ 38 Here, there is no clear evidence of the tax status of the asbestos. However, it is reasonable to infer that the asbestos was personal property when acquired and prior to being installed, because OG & E made arrangements to purchase it without paying sales tax.

¶ 39 In *O'Dell v. Lamb–Grays Harbor Co.,* 911 F.Supp. 490 (W.D.Okla.1995), the court ruled that the offending property was an

14. This Court notes the case of *Goad v. Buschman Co.,* 316 Fed.Appx. 813 (10th Cir.2009), holding that the *Mullis* factors are part of the law of Oklahoma. The case is not published in the Federal Reporter. Goad suffered an injury when her arm was caught in a conveyor system installed on the property more than ten years earlier.

improvement notwithstanding that it was taxed as personal property. The court reasoned that "either a common-law fixture analysis or a common-sense interpretation of the phrase 'improvement to real property'" results in a determination that the slat conveyor in question constitutes an improvement to real property. *Id.* at 494.

¶40 Another line of cases involve preexisting items where the plaintiff argues that the injury causing item was only a component and not part of real property. The courts in this line of cases rejected that contention. These courts reasoned that if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property. The case of *Hilliard v. Lummus Co., Inc.,* 834 F.2d 1352 (7th Cir.1987) (component of a system which is definitely an improvement to real property is an improvement to real property itself) is an example.

¶41 Court cases where the offending item was in place when the injured party performed additional construction or repairs or was otherwise engaged in a task are not applicable at this stage of the analysis under the facts of Olsen's case. These cases, like *Smith,* involve an analysis of whether the *in-place* offending item was an improvement to real property, whereas Mr. Olsen was engaged in initial construction before the asbestos-insulated pipe was installed into the property. *See* William D. Bremer, Annotation, *What Constitutes "Improvement to Real Property" for Purposes of Statute of Repose or Statute of Limitation,* 122 A.L.R.5th 1, § 10(a) (2004).

¶42 After review of the foregoing cases, regarding whether an item is an "improvement to real property," this Court finds that *White, Willis* and *Buttz* are persuasive under the facts of those cases.

¶43 Therefore, when the specific facts are that a plaintiff sustains injury arising out of and during the course of construction due to an item that has not been installed when the injury occurs, then the item retains its status as personal property as a matter of law, even though the item, as an item or as a component, may ultimately be installed and become a part of the realty and an improvement to the realty. *White, Willis* and *Buttz* apply in this specific instance with regard to whether the item is an improvement to real property.

¶44 Here, Mr. Olsen's exposure to asbestos occurred prior to installation of the pipes being insulated. The exception was for pipes installed which required repair or replacement of insulation, but Olsen acknowledges that, if Section 109 applied, an injury claim from this specific exposure would be barred. For purposes of summary judgment, Mr. Olsen's facts and those of *White, Willis* and *Buttz* are indistinguishable. Therefore, the trial court erred by ruling that this case was governed by Section 109.

## B. Alternative Theories.

¶45 In addition to the theory of liability which implicated the statute of repose, Olsen presented a claim for relief on the theories of premises liability and negligent supply of asbestos. Olsen's premises liability claim is that OG & E had a duty to warn about hazards on its premises and prevent injury from hazards on its premises. The hazard here was asbestos and asbestos products. Section 109 does not operate to bar a premises liability claim. *Smedsrud v. Powell,* 2002 OK 87, ¶21, 61 P.3d 891, 898–99; *Abbott v. Wells,* 2000 OK 75, 11 P.3d 1247.[15] The reasoning of these cases would also make Section 109 inapplicable to the negligent supply of asbestos, without warning, claim.

¶46 The trial court in this matter characterized the claim as one designated under Section 109. The trial court's treatment of the claims is not the same as involved in *Gorton v. Mashburn,* 1999 OK 100, 995 P.2d 1114. In *Gorton,* the Supreme Court ruled that Section 109 barred plaintiff's claim that a bridge upon which he had fallen was improperly designed and constructed.[16] Plain-

---

**15.** *Smedsrud* had the added factor that the premises liability theory was the law of the case. However, the Court, citing *Abbott,* distinguished Section 109 claims from premises liability claims. *Smedsrud,* 2002 OK 87, 61 P.3d 891 n. 36.

**16.** There was no issue about whether the bridge was an improvement to real property.

tiff's claim that defendant was also negligent in maintenance of the bridge was found to be made in order to establish a building code violation. Plaintiff attempted to establish the violation of the building code because the code's design and construction terms had been violated. However, the Court ruled that this allegation demonstrated that this claim was actually based on design and construction defects more than ten years old. The Court expressly distinguished premises liability claims. *Gorton,* 1999 OK 100 at ¶ 12, 995 P.2d at 1118.

¶ 47 Therefore, based on the foregoing, this Court finds that the trial court erred by converting Olsen's premises liability and negligence claims to actions described in Section 109.

## CONCLUSION

¶ 48 Title 12 O.S.2011, § 109 is a statute of repose. The elements of the Section 109 bar applicable here are: (1) a tort action; (2) for wrongful death which arises out of a described deficiency; (3) which described deficiency involves an improvement to real property; (4) the defendant, here the owner, is a member of a described class; and (5) ten years have passed since substantial completion. The intent of Section 109 is that persons who own, lease or possess property which has been structurally enhanced shall not be liable for design and construction defects in the built improvement more than ten years after "substantial" completion.

¶ 49 The critical element is whether the asbestos was an improvement to real property at the time, for summary judgment purposes, the asbestos caused injury. Mr. Olsen's exposure to asbestos occurred prior to installation of the pipes being insulated. Under the specific facts of this case, Mr. Olsen's injury arose out of construction of items before they became affixed to the real property, but not an improvement to real property.

¶ 50 Section 109 does not bar claims based upon theories of premises liability or negligence in supplying the asbestos without warning.

¶ 51 The trial court erred in ruling that Olsen's action was barred by Section 109.

Therefore, the judgment of the court is reversed and the cause is remanded for further proceedings.

¶ 52 REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, P.J., and THORNBRUGH, J., concur.