Pauline WHITE, Individually and as Personal Representative of the Heirs and Estate of Charles Norman White, Deceased, Appellant,

v.

CBS CORPORATION f/k/a Westinghouse Electric Corporation, Appellee.

No. 03–98–00194–CV.

Court of Appeals of Texas, Austin.

June 30, 1999.

Kevin D. McHargue, Baron & Budd, P.C., Dallas, for Appellant.

Robert B. Gilbreath, Jenkens & Gilchrist, P.C., Dallas, for Appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and POWERS.[*]

JOHN E. POWERS, Senior Justice.

Pauline White, individually and as representative of the estate of Charles Norman White, appeals from a summary judgment that she take nothing by her actions against Westinghouse Electric Corporation. We will reverse the judgment and remand the cause to the trial court.

---

[*] Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

## THE CONTROVERSY

Charles Norman White contracted cancer (mesothelioma). In 1992, he and his wife Pauline White sued Westinghouse and twenty-one other manufacturers and suppliers of asbestos and products requiring the use of asbestos. The Whites alleged asbestos caused the cancer and that the defendants were jointly and severally liable for the Whites' injuries on causes of action for negligence, gross negligence, strict liability arising from a dangerous product, and conspiracy. Charles Norman White died in 1993, and Pauline White[1] appeared in the cause thereafter as representative of his estate. The actions against Westinghouse were based on Mr. White's alleged exposure to asbestos in the course of his work on and around industrial turbines that Westinghouse designed, manufactured, and installed for Mr. White's employer, the City of Austin.

Westinghouse moved in October 1993 for a "Partial Summary Judgment" based on the bar of the ten-year statute of repose found in section 16.009 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.Code § 16.009 (West 1986). The trial court granted the motion in 1994 and ultimately determined in a 1998 summary judgment that White take nothing by her actions against Westinghouse. White appeals from the 1998 summary judgment.

## APPELLATE JURISDICTION

■ Westinghouse contends we must dismiss White's appeal for want of a timely notice of appeal. The following events transpired in the trial court after Westinghouse filed on October 8, 1993, its motion for partial summary judgment:

On February 24, 1994, the trial judge signed an "Order Granting Partial Summary Judgment," reciting that Westinghouse's motion had been heard, that it "should be granted," and

---

1. We shall refer hereafter to Pauline White as "White" and to Charles Norman White as "Mr. White."

It is therefore ordered that the Motion for Partial Summary Judgment filed by Defendant, Westinghouse Electric Corporation, be and is hereby granted.

The order contains no decretal language.

On May 2, 1994, the trial judge signed an "Agreed Order for Severance of Plaintiff's Claims Against Westinghouse Electric Corporation." The order was filed the day it was signed, and states as follows:

It is therefore ordered, adjudged and decreed that all claims against Westinghouse should be severed from claims against all other Defendants and from all other cases consolidated with Plaintiff's case for trial on May 9, 1994, and *trial of such claims against Westinghouse should be continued.* It is further ordered that such case is severed and the clerk is ordered to place in the new file (Cause No. 92–10123A) a copy of the most recent petition as well as copies of Westinghouse's Motion for Summary Judgment [sic] and all responses related thereto.

(emphasis added). More than three years later, on February 19, 1998, Westinghouse filed a "Motion for Summary Judgment" stating as follows:

On February 24, 1994, [the court] granted summary judgment to Westinghouse based on the Texas Statute of Repose. This extinguished Plaintiff's claims relating to her decedent's exposure to Westinghouse's turbine-generators.... Plaintiff's last mandatory discovery filings indicate that there are no claims of any other type of exposure against Westinghouse. Therefore, there remain no genuine issues of material fact and Westinghouse is entitled to summary judgment on all claims.

The trial court sustained the foregoing motion in an "Order Granting Summary Judgment," signed by the trial judge on March 12, 1998. The order states as follows:

Came on to be heard on the 12th day of March, 1998, [Westinghouse's] Motion for Summary Judgment on all issues. The Court, having considered the Motion, the evidence [sic] before the Court, and arguments of counsel, is of the opinion that there is no genuine issue as to any material fact and said Motion should be granted. It is, therefore Ordered that all of Plaintiff's claims against [Westinghouse] are dismissed with prejudice [sic], with costs incurred in the defense of this matter to be taxed against Plaintiff.

White filed notice of appeal on April 10, 1998.

Westinghouse contends the summary judgment order signed February 24, 1994, was a judgment that disposed of all claims against Westinghouse, and it became final and appealable on May 24, 1994, with the filing of the agreed order severing White's claims against Westinghouse from her claims against the other defendants. *See IPM Prods. Corp. v. Motor Parkway Realty Corp.,* 960 S.W.2d 879, 882 (Tex.App.—El Paso 1997, no writ); 5 *McDonald Texas Civil Practice* § 27.8, at 21 (1992 ed.). Consequently, White's notice of appeal, filed almost four years after the 1994 judgment became final and appealable, was too late to perfect her appeal.

We conclude the order signed February 24, 1994, was not a final judgment made appealable by the subsequent order of severance.

■ No presumption of finality attaches to a summary judgment. The imputation of finality depends on the trial judge's intention, drawn from the language of the order in question, the record as a whole, and, where pertinent, the parties' conduct. *See Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274, 277 (Tex.1996). The order signed February 24, 1994, does not, of course, imply a severance of any kind. *See Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil Co.,* 159 Tex. 550, 324 S.W.2d 200 (1959). The order does not purport to declare the legal effect of granting Westinghouse's motion, as by ordering that White take nothing by her causes of action against Westinghouse. *See Rosedale Partners, Ltd. v. 131st Judicial Dist. Court,*

869 S.W.2d 643, 646–48 (Tex.App.—San Antonio 1994, no writ); *Harper v. Welchem, Inc.,* 799 S.W.2d 492, 493–96 (Tex. App.—Houston [14th Dist.] 1990, no writ); *Chandler v. Reder,* 635 S.W.2d 895, 897–97 (Tex.App.—Amarillo 1982, no writ); 5 *McDonald, supra,* § 27.24.

The agreed severance order filed May 2, 1994, dispels any belief that the preceding summary judgment order was intended to be a final judgment that awaited only a severance to become appealable: the severance order directs a *continuance* of White's actions against Westinghouse, thus rejecting explicitly any idea that those actions had been finally adjudicated in the partial summary judgment signed February 24, 1994. And after the severance was ordered, Westinghouse itself moved for summary judgment on the entire case against it, which action on its part demonstrates objectively that the 1994 judgment was not understood to be a final adjudication. This second of the Westinghouse motions for summary judgment resulted in the summary judgment order signed March 12, 1998.

While the March 12, 1998, order is also defective, because it purports to dismiss in lieu of adjudicating White's causes of action against Westinghouse, we believe the trial court's intention is sufficiently clear from the language employed in the order (dismissal "with prejudice") and the record as a whole. We construe the order to mean that White shall take nothing by her actions against Westinghouse.

For the foregoing reasons, we hold the summary-judgment order signed February 24, 1994, was not a final and appealable judgment, but the order signed March 12, 1998, was such a judgment. White's notice of appeal was therefore timely. We overrule Westinghouse's contention that we must dismiss White's appeal for want of jurisdiction.

## THE STATUTE OF REPOSE

The parties dispute the proper interpretation and application of section 16.009. The statute provides as follows:

(a) A claimant must bring suit for damages for a claim listed in Subsection (b) against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or deficiency in the construction or repair of the improvement.

(b) This section applies to suits for . . .

(2) personal injury; (3) wrongful death;

(4) contribution; or (5) indemnity.

Tex. Civ. Prac. & Rem.Code § 16.009 (West 1986).

The following are reasonable inferences from the deposition transcripts, affidavits, and other parts of the summary judgment record: Mr. White was exposed to asbestos in the course of his work at the Seaholm and Holly Street power plants between 1952 and 1974 when he was employed as a maintenance worker at the two plants. He came to the Seaholm plant in 1952. At that time, Westinghouse had already installed one turbine in the Seaholm plant. Over the succeeding years Westinghouse installed four other turbines at approximately two- or three-year intervals. Concerning the four turbines installed after 1952, Mr. White *helped* "on installing the turbines and [performed] general work around the turbines when they were being installed." During installation of the four turbines, pipes associated with the turbines would receive insulation and insulation would be placed inside the turbines themselves. The insulation material included asbestos products. Westinghouse had "completely installed" all five turbines by the time Mr. White left the Seaholm plant in 1962 to work at the Holly Street plant. When he arrived at the latter plant, Westinghouse had already installed there one turbine. The company installed two others while Mr. White worked at the plant. The three turbines were overhauled nine times during Mr. White's employment at the Holly Street plant. He would check

the turbines during his "watch" to see "if there was anything in any danger or anything or open fuel cans and stuff like that." He did not, however, work directly on the installation and overhaul of the Holly Street turbines.

For purposes of our review of the summary judgment, we must assume the truth of the foregoing, viewing the record in a light most favorable to White, indulging for her benefit every reasonable inference, and resolving all doubts in her favor. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The following, however, appear uncontroverted: Westinghouse designed, manufactured, and installed the turbines using asbestos material; the turbines each weighed between 250,000 and 850,000 pounds and were thirty to eighty feet in length; and the turbines were installed on pilings driven deep into the earth where they rested on special concrete foundations. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

The effect of the summary judgment is to determine as a matter of law that any injury sustained by Mr. White is barred by section 16.009 because the asbestos had been incorporated, *at the time of his exposure*, into an *improvement* on real property *constructed* or repaired by Westinghouse. We believe the summary judgment record will not support this conclusion as a matter of law.

■ It is not contended that the turbines were trade fixtures; it is obvious that they were, before their installation, chattels. They lost that character, however, and eventually became improvements upon their annexation to the realty comprising the Seaholm and Holly Street power plants. In this connection, the word "annexation" means a joinder or uniting of a chattel with realty for a specific purpose—here use of the turbines to generate electricity—coupled with the owner's intent to enhance the freehold by the improvement. The owner's intent in a particular case is inferrable from the surrounding circumstances, including such objective manifestations as the mode and sufficiency of the annexation, either real or constructive, and the adaptation of the chattel to the use or purpose of the realty. As a general rule, the owner's intent is a question of fact for the trier of fact, but it becomes a question of law where reasonable minds could not differ on the issue of intent. *See Sonnier v. Chisholm–Ryder Co., Inc.*, 909 S.W.2d 475, 478–82 (Tex. 1995); *Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex.1985).

■ It is easily inferrable from the summary judgment record, under the rules applicable to summary judgment review, that Westinghouse indeed constructed an improvement—the turbines incorporating the asbestos materials—at the Seaholm and Holly Street plants. The facts surrounding installation of the turbines—their adaptation to the use or purpose of the two plants, their size and the mode and sufficiency of their joinder or annexation to the realty—evidence the City's intent to effect an improvement as a matter of law.[2] That is not the end of the matter, however. The question of timing gives rise to a genuine issue of material fact precluding summary judgment.

■ "There can be no such thing as an improvement *until* personalty is annexed to realty." *Sonnier*, 909 S.W.2d at 481

---

2. *Cf. Logan v. Mullis*, 686 S.W.2d 605 (Tex. 1985). In *Logan*, the landowner constructed a culvert beneath a road by removing the ends of a railroad tank car and placing the altered car in a creek bed. To secure the car, he packed around it with soil, "cement," and wood pilings while protecting the whole with a retaining wall. Several large winch trucks were required to remove the car when the culvert was demolished. The court held the culvert had been annexed to the realty *as a matter of law* inferred from these objective manifestations of the owner's intent to effect an improvement. *See Logan*, 686 S.W.2d at 608.

(emphasis added). Under the summary judgment record, parts of which are summarized above, we may not say as a matter of law that Mr. White's *only* exposure occurred *after* the asbestos had been incorporated into the turbines and annexed to the realty so as to constitute an improvement. As indicated above, the record includes statements that Mr. White helped install four of the five turbines at the Seaholm plant, and worked around two turbines while they were being installed at the Holly Street plant. Nothing in the record suggests that the City intended that the turbines be "joined" or "annexed" to the realty, in a constructive sense, before being installed; and the record suggests affirmatively, by the very fact that the turbines *were not installed* until after Mr. White came to work at the two plants, that they had not been actually annexed *before* his exposure. (We refer, of course, to only four of the five turbines at the Seaholm plant and two of the three turbines at the Holly Street plant).

Because the summary judgment "evidence" suggests that Mr. White's alleged exposure to the asbestos occurred when the asbestos was yet a chattel or contained within a chattel, and thus before section 16.009 had been activated, it cannot be said that White's actions are barred by the statute as a matter of law. *See Willis v. Raymark Indus., Inc.*, 905 F.2d 793, 797–98 (4th Cir.1990). We hold accordingly.

In view of our holding as to White's first assignment of error, we need not consider her remaining assignments of error.

We reverse the summary judgment and remand the cause to the trial court.