Larry Q. FARMER, Appellant,

v.

The CITY OF SAPULPA, Oklahoma, a Municipal corporation, Appellee.

No. 56778.

Supreme Court of Oklahoma.

April 27, 1982.

Rehearing Denied June 2, 1982.

Thompson & Mitchell, Sapulpa, for appellant.

Jim Lindsey, City Atty., Tulsa, for appellee.

SIMMS, Justice:

Sections 30–6 and 30–7 of the Sapulpa Municipal Code give the mayor the authori-

ty to restrict water usage in the event of an emergency.[1] On February 16, 1981, the mayor, by proclamation, forbade the issuance of any new water taps within the city and, with certain exceptions, banned the watering of plants and the washing of driveways and automobiles.[2] Two weeks later, the mayor eased his restrictions somewhat by allowing such water usages between 8:00 a. m. and 8:00 p. m. on Saturdays.

Appellant operated a car wash in Sapulpa and his business was affected by the mayor's proclamations. He brought this action in the district court to declare the proclamation invalid and unconstitutional and to enjoin the city from enforcing them. The district court upheld the validity of the proclamations and the municipal code sections under which they were issued. We affirm the trial court.

Appellant's contention that the Sapulpa Board of Commissioners could not legitimately give the mayor the authority to restrict water usage is not persuasive. The Sapulpa City Charter vests the legislative power of the city in the Mayor and the

1. *Sec. 30–6.* RESTRICTIONS ON USE OF WATER DURING EMERGENCIES—AUTHORITY OF MAYOR. Whenever an emergency exists by reason of a shortage of water, limited distribution facilities or of any other circumstances which make it necessary to conserve water, the mayor of the city is hereby authorized to restrict or prohibit the use of water from the water supply of the city for watering, sprinkling or irrigation of plants, shrubs, trees, grass and things of like nature, for washing automobiles and for any other use not strictly necessary to maintain and protect the public health and safety. Such restrictions upon the use of water may prohibit it entirely for such purposes or may restrict it during certain periods of the day or week for so long as necessary. (Ord.No. 833, § 1.)

*Sec. 30–7.* SAME—PROCLAMATION—GENERALLY. The restrictions mentioned in the preceding section shall be put into effect by the issuance of a proclamation by the mayor which shall set forth such restrictions. Such proclamation shall be published in one issue of a newspaper of general circulation in the city and shall be effective from and after publication. (Ord. No. 833, § 2.)

2. In pertinent part, the mayor's proclamation provided as follows:

A. It shall be unlawful and it is hereby declared to be an offense for any user of water, supplied by the City of Sapulpa, Oklahoma, to use or allow the use of water furnished by said City by means of a hose or irrigation system for the purpose of sprinkling, irrigating, or otherwise watering lawns, shrubbery, or vegetation of any kind or for the purpose of washing or sprinkling driveways or sidewalks, or washing any automobile, truck or other motor vehicle at a commercial car wash or other location;

B. That from the effective date of this Proclamation, there shall be no issuance of new water taps within the City of Sapulpa;

C. The provisions of this Proclamation shall not apply to the immediate premises of any commercial nursery which raises or maintains plants or shrubbery for sale, the recreational properties of the municipality, or commercial motor vehicles used in the transportation of foods, food products and perishables, or commercial garbage pickup motor vehicles; . . .

Board of Commissioners.[3] The charter does not give the mayor the authority to issue proclamations, but it does give the Board of Commissioners the power to assign duties to city officers.[4] Board assigned to the mayor the duty of controlling water usage in time of emergency.[5] There is nothing in the charter which would prohibit such a course of action.

■ Title 11, O.S.Supp.1978, §§ 10–105 and 10–106, cited by the appellant, are not relevant. They pertain to cities governed by the statutory council-manager type of government and Sapulpa does not have such a government. Sapulpa is governed by its own city charter and, as provided by 11 O.S.Supp.1978, § 13–109, where city charter provisions conflict with state law as to purely municipal matters, the charter provisions prevail.

■ Also for that same reason, we are not persuaded by appellant's argument that sections 30–6 and 30–7 of the Sapulpa Municipal Code are an unconstitutional delegation of legislative authority. As this Court observed in *Hinz v. Hubbard, 95 Okl. 164, 216 P. 440 (1923)*, the form of government of a charter city is a matter of local concern, and the provisions of the charter will control in the distribution of powers and duties in the municipal government.

The City of Sapulpa evidently had water supply problems for a long time. Sections 30–6 and 30–7 of the municipal code were enacted in 1954, long before the appellant opened his car wash, according to the district court. The record on appeal does not indicate whether or not the mayor's author-

ity had ever been exercised before, but early in 1981, the mayor, acting as the duly designated agent of the city government, determined that restrictions on water consumption were necessary to preserve the health and safety of the public.

■ Appellant does not dispute the fact that a real water supply emergency did exist. Nor does he dispute that the washing of automobiles is clearly a non-essential use of water under the ordinances. He argues simply that in their application, the proclamations are arbitrary and unconstitutionally discriminate against him because other commercial users of water were not affected by the proclamations, and that the district court used an incorrect standard of review in ruling in the City's favor. The district court found that there had been discrimination, but held that the City's actions could not be considered manifestly unreasonable or clearly transcending the police power given the City.

Even the most superficial reading of the mayor's proclamation shows that people are prohibited from using water for some purposes but not for others, and that while the appellant's business is seriously affected, other businesses are not. But the question is not one of simply whether or not there was discrimination. The question is whether or not the discrimination was arbitrary and unreasonable.

The rule is "not that there must not be any discrimination of any kind, but that there must be no unjust discrimination." *Fretz v. City of Edmond, 68 Okl. 262, 168 P. 800 (1916)*.

---

**3.** "The Mayor and Commissioners shall be the legislative body of the City Government, and all legislative power of the city is vested therein, excepting the legislative power herein reserved to the inhabitants of the city under the Initiative and Referendum; unless specifically conferred upon some other body." (The excerpts from the city charter quoted in the appellant's brief differ in some respects from the language of the City Charter which has been filed with the Secretary of State. If there have been some amendments to the Charter which have not been filed with the Secretary of State, they are not subject to judicial notice by this Court. 11 O.S.1981, § 13–108. No portion of the City

Charter was pled or proven in the record provided to this Court on appeal.)

**4.** "It [Board of Commissioners] shall prescribe by ordinance the duties of all officers and agents whose duties are not defined by this Charter, and it may by ordinance prescribe for any officer or agent, other duties than those herein prescribed, not inconsistent with the provisions of this Charter .." Sapulpa City Charter, Article 3, Section 5.

**5.** Sections 30–6 and 30–7 of the Sapulpa City Code. See fn. 1, supra.

While it is true that the proclamations affected certain recognized non-essential uses of water and not others, there is nothing before us which indicates that this was an inappropriate response to the then existing water shortage. Neither has appellant shown that the ordinances somehow required the mayor to curtail all non-essential uses rather than that portion which would reasonably be anticipated to alleviate the problem.

This action concerns the power of a city to take emergency action safeguarding the welfare and health of its citizens. Appellant's arguments that the city must be judged in the same way as a private utility would be if it discriminated against its customers in rates or services, (as in *Oklahoma City Hotel and Motor Hotel Ass'n., Inc. v. The City of Oklahoma City, Okl., 531 P.2d 316 (1974)* are therefore inappropriate to the issues before us.

As we stated in *Utility Supply Company, Inc. v. City of Broken Arrow, Okl., 539 P.2d 740, 743 (1975)*:

> "The police power of a municipality is comprehensive and is exercised to promote the health, comfort, safety or welfare of society. In the enactment of ordinances and regulations much must be left to the discretion of municipal authorities. Their acts will not meet with judicial interference unless they are manifestly unreasonable and oppressive, unwarrantedly invade private rights, clearly transcend the police powers given to them, or infringe upon the rights secured by fundamental law."

Under the record presented to us, the proclamations at issue do not present a situation of such unreasonable and unjust discrimination that reversal is warranted.

The judgment of the trial court is therefore Affirmed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN, HARGRAVE, and WILSON, JJ., concur.

OPALA, J., dissents.