1998 OK CIV APP 14

1998 OK CIV APP 14

**Robert E. THOMAS, et al., Plaintiffs/Appellants,**

v.

**The CITY OF OKLAHOMA CITY, a municipal corporation, et al., Defendants/Appellees.**

**No. 87440.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 30, 1998.

Robert J. Unruh, Jr., Oklahoma City, for Plaintiffs/Appellants.

William O. West, Municipal Counselor, Susan D. Randall, Assistant Municipal Counselor, Oklahoma City, for Defendants/Appellees.

BUETTNER, Presiding Judge:

¶ 1   Plaintiffs/Appellants Robert E. Thomas, Barbara Cross, Walter Wallace, and Gerald Miller ("taxi drivers") appeal the trial court's denial of a permanent injunction against enforcement of an Oklahoma City ordinance by Defendants/Appellees the City of Oklahoma City, Mayor Ronald J. Norick, City Manager Donald D. Bown, and Chief of Police Sam Gonzales (City).  Because we find the trial court did not abuse its discretion, and the denial of the injunction is not against the clear weight of the evidence, we affirm.

¶ 2   On December 8, 1993, the City published Ordinance No. 20,070, an emergency ordinance which created the Vehicle for Hire Committee and changed the suspension of certificate, as well as the notice and hearing provisions for persons holding certificates to operate vehicles for hire.[1]  And, pertinent to the instant proceedings, Ordinance No. 20,070 required that all new applicants for a certificate of convenience and necessity take a "Driver's Training Program" before approval of certificate.

¶ 3   Section 56–120 of Ordinance 20,070 provided that the City adopted a taxicab driver's training program to include at least 35 hours of instruction in 1) passenger relations/professionalism, 2) defensive driving, 3) knowledge of service area, 4) rules and regulations, 5) drivers and passengers health and safety, and 6) emergency care training.  Section 56–131 of Ordinance 20,070 added that any person granted a driver's permit to operate a taxicab shall present and maintain a hygienically clean, neat and well-groomed personal appearance while on duty.[2]

¶ 4   Taxi drivers sought an injunction to prohibit the enforcement of Ordinance 20,070.  On July 15, 1994, the district court held that § 56–120 of Ordinance 20,070 was unconstitutional because it required the driver training course only for taxi drivers and not for drivers of all vehicles for hire.  The City

---

1. Municipalities may require an operator of a vehicle for hire to obtain a certificate of convenience and necessity as a condition to issuance of a municipal license to operate a taxicab.  11 O.S. 1991 § 22–118(6).  The Oklahoma City Municipal Code, § 56–61 requires a certificate of convenience and necessity be held by all operators of taxicabs.

2. Although taxi drivers complain in their brief about this requirement, they did not raise it in their petition and it is not addressed in Ordinance 20,216, the subject of the instant appeal. We therefore do not consider it.

then enacted Ordinance 20,216, which required *all* drivers of vehicles for hire to complete a driver's training program before receiving certificates.[3] Taxi drivers then sought a temporary injunction against enforcement of Ordinance 20,216, which was denied.

¶5 Taxi drivers appealed the denial of the temporary injunction and requested a stay pending appeal from the Supreme Court. The Supreme Court granted taxi drivers' stay of enforcement pending appeal May 2, 1995. In an unpublished opinion in Case No. 85,013, this court reversed the trial court's denial of the motion for temporary injunction, stayed the enforcement of § 56–2 of Ordinance 20,216 until final disposition of this matter; and remanded this matter to the trial court.

¶6 Trial on the merits was held March 20, 1996. The district court filed its order April 9, 1996, finding that Ordinance 20,216

3. The text of Ordinance 20,216 is as follows (heading omitted):

Be it ordained by the City of Oklahoma City:

*Section 1.* That Article I of Chapter 56 of the Oklahoma City Municipal Code, 1980, is hereby amended by the enactment of a Section 56–2 to read as follows:

Sec. 56–2. Vehicles for hire; driver's training certificate required; driver's training program.

(a) *Citation of authority.* This section is being enacted under the police power authority granted to the City pursuant to Section 3 of Article I of the Oklahoma City Charter, as amended.

(b) *Legislative findings; determination; purpose.* Council finds that the provisions of this section are necessary to protect the health, safety, and welfare of inhabitants of and visitors to the City. Council finds that whenever an inhabitant of or a visitor to the City engages a vehicle for hire, said inhabitant or visitor reasonably expects that the driver of such vehicle is reasonably trained and, further, that said driver will not unreasonably endanger the health, safety, or welfare of the customer of the vehicle for hire. Based on said findings, Council determines that all drivers of vehicles for hire should obtain a driver's training certificate from the City prior to the operation of the vehicle for hire and that prior to obtaining such certificate said drivers should receive training in certain subjects. Thus, Council declares that the purpose of this section is to protect and promote the public health, safety, and welfare by requiring all drivers of vehicles for hire to be properly trained and to demonstrate evidence of such training prior to operation of the vehicle for hire.

(c) *Definitions.* For the purpose of this section, the following definitions shall apply: 1. *"Driver"* means any person operating a vehicle for hire within the City; 2. *"Driver's training certificate"* means a document issued to a driver by the Supervisor of Licenses certifying that the driver has completed a driver's training program; 3. *"Driver's training program"* means a training course at an educational institution approved by the Oklahoma City Traffic Commission, which training course shall include not less than of (*sic*) thirty-five (35) hours of driver's training, with all of the following subjects being covered in the training course: a. Passenger Relations/Professionalism; b. Defensive Driving Techniques; c. Knowledge of Service Area; d. Legal Rules and Regulations; e. Driver's and Passenger's Health & Safety; and f. Emergency Care Training; 4. *"Vehicle for hire"* means every motor vehicle operated for hire to transport passengers upon the streets of the City; provided, said term shall not be construed to include car pools.

(d) *Driver's training program; completion required.* No person shall operate a vehicle for hire without first completing a driver's training program.

(e) *Driver's training certificate required.* No person shall operate a vehicle for hire without first obtaining a driver's training certificate from the Supervisor of Licenses. Such certificate shall be obtained by making application to the Supervisor of License on a form provided by the Supervisor of Licenses and paying a Five Dollar ($5.00) application fee to defray the costs of processing the application and issuing the certificate. Upon payment of the Five Dollar ($5.00) application fee and demonstration of compliance by the applicant with the provisions of paragraph d. of this section, a driver's training certificate shall be issued to the applicant.

(f) *Compliance date for drivers.* All drivers of vehicles for hire shall have until April 1, 1995, to obtain a driver's training certificate.

. . .

(g) *Violations; penalty.* No person shall violate any of the provisions of this section. Any violation of the provisions of this section shall constitute an offense and, upon conviction, the violator shall be punished by a fine not exceeding One Hundred Dollars ($100.00), plus costs. Each day a violation continues shall constitute a separate offense.

*Section 2.* That Chapter 60, the General Schedule of Fees is amended by the addition of a new section 60–56–14 to read: Section 60–56–14. Temporary driver's permits; application fees. (1) application fee for driver's training certificate $5.00 (2) three month temporary permit, each $6.50

*Section 3.* Codification. The provisions of Section 1 of this ordinance shall be codified as Section 56–2 of Article I of Chapter 56 of the Oklahoma City Municipal Code, 1980.

. . .

Passed by the Council of the City of Oklahoma City this 23rd day of August, 1994.

. . .

does not violate any city, state or federal law and is constitutional. The court therefore denied taxi drivers' petition for a permanent injunction against enforcement of Ordinance 20,216. Taxi drivers then filed the instant appeal. Taxi drivers argue that Ordinance 20,216 is preempted by state law, that the ordinance violates taxi drivers' fundamental rights, and that the City violated the Open Meetings Act. We address taxi drivers' allegations of error in order.

■ ¶ 7 Taxi drivers first argue that the City exceeded the powers granted to it by the Legislature to regulate vehicles for hire. Taxi drivers expressly argue that the Oklahoma statutes do not give the City the right to regulate the operation of taxicabs. However, we need not determine whether Oklahoma statutes expressly give the City the right to regulate taxicabs as in Ordinance 20,216. The City is a home-rule charter city under Article 18, section 3(a) of the Oklahoma Constitution. Chartered home-rule cities have full power of local government and may enact ordinances to protect the public peace, order, health, morals, and safety, even though state statutes may address the same subjects. *Ex Parte Gammel*, 89 Okla.Crim. 400, 208 P.2d 961, 965; Article I, § 3, Oklahoma City Charter. We may not find a conflict between an ordinance enacted by a chartered home-rule city and Oklahoma statutes unless each contains "express or implied conditions which are inconsistent and irreconcilable.... If either is silent where the other speaks, there can be no conflict." *Moore v. City of Tulsa*, 1977 OK 43, 561 P.2d 961, 963. We have reviewed 11 O.S. 1991 § 22–118 which grants municipal governing bodies "full police powers for the purpose of preserving public health, safety and welfare over the operation, regulation and control of taxicabs within the limits of the municipality." While the police powers granted in § 22–118 are limited to certain specified powers and subjects, we do not find that § 22–118 expressly limits the powers of home-rule cities. Nor do we find that § 22–118, by granting all municipal governing bodies limited authority to regulate taxicabs, impliedly prohibits home-rule cities from regulating taxicabs under their general police powers. Thus, we find no inconsistent and irreconcil-

able conditions in § 22–118 and Ordinance 20,216.

■ ¶ 8 Municipal ordinances are presumed valid and the burden falls on taxi drivers to prove that Ordinance 20,216 is invalid. *City of Tulsa By and Through Tulsa Airport Authority v. Air Tulsa, Inc.*, 1992 OK 146, 851 P.2d 519; *Ex Parte Davis*, 82 Okla.Crim. 444, 172 P.2d 340 (1946). Ordinance 20,216 was enacted pursuant to the police powers granted to the City in Art. I, § 3 of the Oklahoma City Charter. The ordinance states that it is necessary to protect the health, safety and welfare of inhabitants and visitors to the City. The purpose of the ordinance is "to protect and promote the public health, safety, and welfare by requiring all drivers of vehicles for hire to be properly trained and to demonstrate evidence of such training prior to operation of the vehicle for hire." We find this stated purpose, as well as the provisions of Ordinance 20,216, is not inconsistent with any Oklahoma statute. Taxi drivers presented evidence that the ordinance was not "necessary" because of in-house training programs, and that a particular driver's training program was worthless. However, subjective opinions of necessity of the ordinance, or the quality of its implementation are not the test. Taxi drivers have failed to prove that Ordinance 20,216 conflicts with state law. Therefore, because the City is a chartered home-rule city, the instant exercise of the city's police powers is valid.

■ ¶ 9 Taxi drivers next assert that Ordinance 20,216 violates their constitutionally protected "liberty interests, privacy rights, and freedom of expression." Ordinances passed by municipalities under their police powers will not be overturned unless they are "manifestly unreasonable and oppressive, unwarrantedly invade private rights, clearly transcend the police powers given to them, or infringe upon the rights secured by fundamental law." *Farmer v. City of Sapulpa*, 1982 OK 58, 645 P.2d 518. Although taxi drivers state in their brief that it is clear that Ordinance 20,216 meets all of the above criteria for judicial interference, taxi drivers fail

to explain how or why the ordinance violates their fundamental rights.

¶ 10   The United States Supreme Court in *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), held that the promotion of safety is at the core of the state's police power.  Accordingly, the burden rests on taxi drivers to show there is no rational connection between the regulation and the promotion of safety of persons and property.  *Kelley,* 425 U.S. at 247, 96 S.Ct. at 1446.  Taxi drivers have not established that the ordinance in question is irrational and arbitrary as required by *Kelley* and *Grusendorf v. City of Oklahoma City,* 816 F.2d 539, 543 (10th Cir.1987) (not irrational and arbitrary exercise of police power for city to prohibit firefighter trainees from smoking on or off the job during first year of employment).  We therefore find no merit in taxi drivers' contention that the driver training required by Ordinance 20,216 violates their fundamental rights.

¶ 11   Taxi drivers' final argument in this appeal is that the City violated the Open Meeting Act.[4]  Although taxi drivers' argument fails to explain which meeting of what group violated the Open Meeting Act, we perceive from taxi drivers' statement of the case preceding their arguments that taxi drivers' complaint relates to a meeting of the City's Traffic Commission.  From the City's brief on appeal, it appears that at the November 21, 1994 meeting of the Oklahoma City Traffic and Transportation Commission, the commission approved Metro Transit's (the City's bus service) proposed training program which was designed to comply with Ordinance 20,216.  Taxi drivers appear to argue that the acceptance of Metro Transit's training program effectively exempted bus drivers from the requirements of Ordinance 20,216.

¶ 12   The agenda for the November 21, 1994 meeting of the City's Traffic and Transportation Commission states that it was posted with the City Clerk and posted on the municipal bulletin board on November 15, 1994.  The agenda includes, under part VI, Items for individual consideration, "D. Rick Cain, METRO Transit, 300 SW 7th Street,

73109.  (All Wards) Consider amending Article I of Chapter 56 of the Oklahoma City Municipal Code, 1980, Section 56–2 pertaining to vehicles for hire."  The minutes from the November 21, 1994 meeting of the Traffic and Transportation Commission reflect that Rick Cain, representing Metro Transit, informed the commission that Metro Transit already had in place an 80 hour training program.  Metro Transit requested that this program be accepted as the driver's training program prescribed by Ordinance 20,216, for Metro Transit drivers.  The commission voted to accept Metro Transit's program.

¶ 13   Taxi drivers appear to argue that the City violated the Open Meeting Act by failing to give advance notice of the time and place of the meeting, as well as the subject matter to be considered.  Taxi drivers argue it is not sufficient notice under the act to state in the agenda that the purpose of the meeting is to amend an ordinance, and then instead "grant exceptions or exemptions" at the meeting.  The commission minutes do not indicate that "exceptions or exemptions" were granted to Metro Transit.  The Ordinance requires an approved driver's training program and at the November 21, 1994 meeting, the commission approved Metro Transit's driver's training program.  The notice indicated that the ordinance was on the agenda.  The commission did not amend the ordinance to exclude bus drivers, as implied in taxi drivers' statement of the case.

¶ 14   Taxi drivers have failed to provide authority that the notice or the meeting violated the Open Meetings Act.  Even if a violation could be shown, there is no argument that such a violation impairs the validity of the ordinance at issue, or would affect the issue on appeal, i.e., whether a permanent injunction was properly denied.

¶ 15   For these reasons, we AFFIRM the trial court's denial of taxi drivers' request for a permanent injunction against enforcement of Ordinance 20,216.

HANSEN and ADAMS, JJ., concur.

4.  25 O.S. 1991 § 301 et seq.