2005 OK CIV APP 69

**Lindsey R. SMITH, Plaintiff/Appellee,**

**v.**

**STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.**

**No. 101,651.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 29, 2005.

Certiorari Denied Sept. 20, 2005.

Mike O'Brien, Oklahoma City, OK, for Plaintiff/Appellee.

Kenneth Linn, David J. Mueller, Oklahoma Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶ 1 Two City of Edmond police officers were suspicious of Plaintiff Lindsey Smith's possible criminal activity and contacted fellow officer Harwell to follow her, stop her when he could, and investigate. He followed her vehicle and when she made a right turn without using her turn signal, in violation of Edmond city ordinance, he stopped her vehi-

cle. He issued her a warning, returned her license to her, but before releasing her, asked permission to search her car. She then told him she had beer in the car. He conducted a field sobriety test, and arrested her for DUI. Her driving privileges were revoked and the revocation was affirmed after an administrative hearing. She appealed to District Court which reversed the revocation after Officer Harwell's testimony, on the grounds that DPS presented insufficient evidence that reasonable suspicion existed for the traffic stop and that insufficient evidence of a traffic violation was presented. We find that there was sufficient evidence for reasonable suspicion, and although City's ordinance is preempted by state law, it was presumptively a valid ordinance at the time of the stop. Therefore, we reverse the trial court's order setting aside the license revocation.

¶ 2 At around 3:00 a.m. December 31, 2003, two Edmond policemen observed Smith sitting in her car in a strip mall, next to a car occupied by someone they suspected of being a drug dealer. The two officers called Officer Harwell and asked him to follow Smith. He followed Smith and when she failed to signal when making a right turn in a residential area, in violation of Edmond Ordinance 10.32.060,[1] he stopped her car. He found she had a valid driver's license and current insurance, and was twenty years old. He issued her a warning for failure to signal and told her she was free to go. Then he asked if she had anything illegal in her car. He thought she was acting nervous and he could tell her eyes were bloodshot and watery, but he could not smell any alcohol because of the wind. She stated that she did not have anything illegal in the car, but gave her consent to a search. Before he started the search, she confessed to having beer in the car. He then smelled beer on her breath and began conducting field sobriety tests. She stated she

---

1. **Chapter 10.32 Turning Movements.**
   **10.32.060   Turn and stop signals required.**
   No person shall turn a vehicle at an intersection or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway, without giving an appropriate signal in the manner hereinafter provided.
   A signal of intention to turn right or left when required shall be given continuously during not

less than the last fifty feet traveled by the vehicle before turning.
   No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided hereinafter to the driver of any vehicle immediately to the rear when there is opportunity to give such signals.

had consumed two beers. He arrested her and took her to the police station for booking.

¶ 3 On cross-examination, the officer stated that Smith's failure to signal did not interfere with the operation of officer's vehicle or anyone else's vehicle. It did not cause him to slow up or stop abruptly and did not effect his driving at all. He was behind her and there were no other vehicles around. He did not have to know which way she was going to turn at the intersection. It did not matter to him. He did not notice anything about her driving while he was following her that made him believe she was under the influence.

¶ 4 After ascertaining that DPS had no other witnesses concerning the stop and arrest, the trial court sustained the appeal and set aside the revocation.

▮ ¶ 5 The problem in this case comes not with following Smith's car. The officer "... was simply making a reasonable inquiry of a person brought to his knowledge under circumstances suggesting a crime had been or was about to be committed." *Mike v. State*, 1988 OK CR 205, ¶ 6, 761 P.2d 911, 913. In *Mike*, the manager of a doughnut shop reported that after she sold out of doughnuts and was closing shop, a man appeared demanding doughnuts. After an argument, he staggered back to his car and drove away in the wrong lane at a high rate of speed. Because of that and because he smelled strongly of alcohol, the shop manager called the police. An officer, about ten minutes later, observed the man in his vehicle, driving in the correct lane and slightly below the speed limit. He followed him to a convenience store. The officer watched as the man staggered slightly upon entering the store and when he came out with a 12–pack of beer, the officer spoke with him. At that time, the officer noticed other signs of intoxication (bloodshot, glossy eyes, slurry speech

and strong alcohol smell) and placed him under arrest for DUI.

▮ ¶ 6 Similarly, if an officer is performing an investigation of unusual and suspicious behavior reported to him and finds evidence of contraband unrelated to the reported suspicious behavior, there is no cause for suppression of the contraband. In *Atterberry v. State*, 1986 OK CR 147, 726 P.2d 898, a jogger reported to a police officer that a man was following her in his pickup truck and staring at her as she jogged in a park. The officer stopped the man in question to investigate. The man then dropped a white package to the ground which, upon examination, contained a white substance which the officer determined was a narcotic. The man moved to suppress the methamphetamine on the ground of illegal arrest, stating that the police lacked probable cause to stop and arrest him. The court held that the police have "... a right and a duty to investigate unusual or suspicious circumstances." "Further, if, at the time of arrest, facts and circumstances within the officer's knowledge would be sufficient to warrant a prudent person believing that an offense had been or was being committed, probable cause is established and the arrest is lawful." *Id.* at ¶ 3, p. 899.

¶ 7 Officer Harwell had reasonable cause to follow, based on the information from his fellow officers. In addition, he testified that he was looking for probable cause to stop Smith's vehicle.[2] To make the question clear, DPS's lawyer asked the trial court, "For purpose of the record, Judge, so I make sure your (sic) clear what your ruling is, you're ruling that the officer had insufficient grounds to make a traffic stop, is that correct?" The Court replied in the affirmative.

▮ ¶ 8 Municipalities, such as the City of Edmond, may enact and enforce ordinances in conformance with the Oklahoma Highway Safety Code, 47 O.S.2001 § 1–101 et seq.[3]

---

2.

Q You were following her with the intention of stopping her, correct?
A Yes, sir, I was.
Q That's why you were following her?
A Yes, sir.
Q So you weren't going to stop her unless there was some kind of violation of law?

A I had reasonable suspicion to stop her but I was looking for probable cause.

3. 47 O.S.2001 § 11–1008 **Power of municipality or political subdivision to enforce act**
    Any municipality or political subdivision of this state may enact and enforce any ordinance, rule or regulation adopted in conformity with this act. Such ordinance shall also authorize the munici-

"The municipal governing body may establish ordinances and regulations governing the operation of motor vehicles and traffic upon the roads and streets within the municipality in the manner provided by, and not inconsistent with, state law." 11 O.S.2001 § 22–117(A). The City of Edmond, by ordinance 10.32.060, requires a turn signal to make a left or right turn at an intersection:

> No person shall turn a vehicle at an intersection or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway, without giving an appropriate signal in the manner hereinafter provided.

This was the traffic violation for which Smith was stopped. However, 47 O.S.2001 § 11–604(A) states:

> No person shall turn a vehicle at an intersection, a public or private road, or a driveway, unless the vehicle is in proper position upon the roadway as required in Section 11–601 of this title, or move right or left upon a roadway unless and until such movement can be made with reasonable safety. **No person shall so turn any vehicle without giving an appropriate signal as provided in subsection B of the section, in the event any other traffic may be affected by such movement.** (emphasis added).

¶ 9 Edmond's ordinance does not comport with the Act. "There is much support in the case law for the proposition that an ordinance which prohibits an act which the statute permits is impliedly preempted." *Sands & Libonati Loc Govt Law* § 14.04. As a rule, "[c]ity ordinances may not run counter to the general laws of the state as enacted in statutes." *Allen v. The City of Oklahoma City,* 1998 OK CR 42, ¶ 4, 965 P.2d 387, 389 (City enacted ordinance mandating 15–day jail sentence for offering to engage in a lewd act which conflicted with state law which gave municipal judges power to suspend or defer sentence).

¶ 10 The burden was on Smith to challenge the presumption of validity of the municipal ordinance. See *Thomas v. The*

*City of Oklahoma City,* 1998 OK CIV APP 14, 955 P.2d 747. She presented evidence that she complied with the state statute and asked that the statute be noticed by the court.

¶ 11 Nonetheless, for the purpose of the case at bar, because there was no controlling precedent that City's ordinance was preempted, then it was presumptively valid at the time of the stop. See *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id.* at 38, 99 S.Ct. at 2632. In the *DeFillippo* case, the United States Supreme Court held that a subsequent determination of invalidity of Detroit's ordinance on vagueness grounds (officer may stop and question individual if he has reasonable cause to believe the individual's behavior warrants further investigation for criminal activity) did not undermine the validity of the arrest. It further held that the evidence of contraband found in the subsequent search should not have been suppressed. As a result, in the instant case, the traffic stop was valid even though the Edmond City ordinance is inconsistent with state law.

¶ 12 Because we find that in the instant case the District Court erred in stopping the trial on appeal from the administrative hearing, we REMAND for further proceedings consistent with this opinion. REVERSED AND REMANDED.

HANSEN, J., dissents, and JOPLIN, P.J., concurs.

pality to investigate accidents on private property where the public is invited or public property.