VULCAN CONSTRUCTION MATERIALS v. CITY OF TISHOMINGO
2023 OK CIV APP 5
526 P.3d 1171
Case Number: 118573
Decided: 04/22/2022
Mandate Issued: 03/02/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2023 OK CIV APP 5, 526 P.3d 1171

 

VULCAN CONSTRUCTION MATERIALS, LLC, and ARBUCKLE AGGREGATES, LLC, Plaintiffs/Appellants,
v.
CITY OF TISHOMINGO, OKLAHOMA, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
JOHNSTON COUNTY, OKLAHOMA

HONORABLE JEFF VIRGIN, TRIAL JUDGE

AFFIRMED IN PART AND REVERSED IN PART

Jon E. Brightmire, Kaylee Davis-Maddy, DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P. Tulsa, Oklahoma, for Plaintiff/Appellant Vulcan Construction Materials, LLC

Elizabeth C. Nichols, ELIZABETH C. NICHOLS, P.C., Edmond, Oklahoma for Plaintiff/Appellant Arbuckle Aggregates, LLC

Krystina E. Phillips, INDIAN AND ENVIRONMENTAL LAW GROUP, LLC, Ada, Oklahoma and
Michael Burrage, Patricia A. Sawyer, J. Renley Dennis, WHITTEN BURRAGE, Oklahoma City, Oklahoma, for Defendant/Appellee City of Tishomingo, Oklahoma

Anthony J. Ferate, Andrew W. Lester, SPENCER FANE, LLP, Oklahoma City, Oklahoma, for Amicus Oklahoma Aggregates Association

Brian M. Nazarenus, NAZARENUS STACK & WOMBACHER LLC, Greenwood Village, Colorado, for Amicus Curiae, The Oklahoma City Water Utilities Trust

Daniel McClure, Oklahoma City, Oklahoma, For Amicus Oklahoma Municipal League, Inc.

GREGORY C. BLACKWELL, JUDGE:

¶1 The plaintiffs, limestone mining companies operating or planning to operate

BACKGROUND

¶2 The City of Tishomingo, not unlike all municipalities, is deeply concerned about securing a reliable source of water for its citizens. But Tishomingo has a special reason to be concerned: currently, all of the city's water is derived from a single source--Pennington Creek--which emanates from the Arbuckle-Simpson aquifer just north of the city. The city has appropriation permits that allow it divert up to 7,520 acre-feet--being nearly 2.5 billion gallons--of water per year from Pennington Creek. However, the permits do the city no good if there's not enough water flowing in the creek. The city is concerned that the creek flows less and less each year, and it lays at least part of the blame at the feet of the plaintiffs. To say that the City of Tishomingo has a vested interest in the continual and robust flow of Pennington Creek would be a vast understatement.

¶3 The plaintiffs below are limestone mining companies operating in and near Pennington Creek, approximately eighteen miles northwest of Tishomingo's corporate limits. Unlike the City, the mines have little to no use for the water of Pennington Creek. To them (ironically), the water is nothing but a nuisance. To put it in its simplest possible terms, when these companies mine, they make deep and wide holes in the earth. Unabated, these holes would become small lakes, as groundwater seeps--and surface water flows--in. In order to do their work of removing earth, the companies must get the water out of the way.withdraw, but to how much they use. Per state law, the mines can withdraw and remove all the water they wish, as long as they return the vast majority of that water to the aquifer.

¶4 In this case, because they are operating on and near the Arbuckle-Simpson aquifer, which is a highly-regulated sensitive sole-source groundwater basin,0.2 acre-feet per year.equal proportionate share. It is undisputed that the mining companies are in compliance with state law and regulations in that, although they are withdrawing far greater than their equal proportionate share, their overall use is far less than this amount, as the vast majority of the water they use goes back into the aquifer. The parties agree that current state law regulates the mining companies' use only. However, the present controversy arises because, according to the City, the companies are removing water from the Pennington Creek watershed, thereby affecting, or at least potentially affecting, the flow of Pennington Creek, but are replenishing the aquifer in a way that does not benefit Pennington Creek.

¶5 In an effort to address its concerns, Tishomingo modified its City ordinances so as to limit mining companies' ability to remove water from the Pennington Creek watershed, irrespective of both whether the withdrawal occurs within the City's corporate territory and whether the company is returning the withdrawn water to the aquifer in accordance with state law.

¶6 The first ordinance, No. 2015-02, modified two sections of the City's municipal code to expand the City's definition of nuisance. After a lengthy preamble, the ordinance first amended section 8.03.003 of the City's code to delete the following stricken language:

It is unlawful for any person, including but not limited to any owner, lessee, or other person, to create or maintain a nuisance within the city or permit a nuisance to remain on premises under his control within the city.

Second, the City amended section 8.03.007 to add a twenty-ninth definition of acts that may constitute a "nuisance":

(29) The withdrawal of groundwater, in whole or in part, from the Pennington Creek subsurface watershed:

i. in excess of the amount that would be allowed by application of the Equal Proportionate Share; or

ii. that otherwise interferes with, degrades, or undermines the water quality or quantity of Pennington Creek.

¶7 A second ordinance, No. 2017-01, was enacted in February of 2017. This ordinance added an entirely new section to Tishomingo's municipal code, No. 8.03.015, which describes a series of procedures that the City would follow to abate any nuisances occurring outside the City's corporate boundaries.

¶8 In March 2017, Vulcan filed a petition for declaratory and injunctive relief, arguing, among other things, that the regulations were preempted by state law and that Tishomingo was thereby powerless to enforce them. Arbuckle Aggregates (AA) filed its own petition seeking similar relief. The City responded and filed a counterclaim seeking declaratory judgment that the ordinances were constitutionally sound and within the statutory power granted to a municipality by 50 O.S. § 16

¶9 The court held a seven-day trial, spanning November 2018 to February 2019, at which numerous lay and expert witnesses testified. In December 2019, the court issued its ruling, consisting of a sixty-eight page order, adopted nearly verbatim from the City's proposed findings of facts and conclusions of law, and which found for the City in all critical respects.82 O.S. § 1020.250 O.S. § 16

¶10 Vulcan and AA each appealed the decision. In addition to the briefs filed by the parties, three amicus briefs were filed. The brief of the Oklahoma Aggregates Association opposes the trial court's decision, while the briefs of the Oklahoma Municipal League and Oklahoma City Water Utilities Trust support it.

STANDARD OF REVIEW

¶11 This case presents a pure question of law--namely, whether the ordinances in question are preempted by state law--and is therefore reviewed de novo. See Highpointe Energy, LLC v. Viersen, 2021 OK 32489 P.3d 28

ANALYSIS

¶12 Here, we are faced with a direct conflict between a state law and a local ordinance. The very act that state law permits--the mines' withdrawal of more than their respective share of water from the aquifer--is an act that is declared unlawful by the City's 2015 ordinance. However, city ordinances that directly conflict with state law are invalid. See Moore v. City of Tulsa, 1977 OK 43561 P.2d 961not in conflict with statutes on the same subject.") (emphasis supplied)); Allen v. City of Oklahoma City, 1998 OK CR 42965 P.2d 387Smith v. State ex rel. Dep't of Pub. Safety, 2005 OK CIV APP 69120 P.3d 897See 82 O.S. § 1020.2et. seq. (Subchapter 15: Water Trapped in Producing Mines). To the extent the ordinances under review conflict with what state law directly permits, they are invalid.

¶13 To defend its ordinances, the City points to 50 O.S. § 16

Cities and towns in this state shall have the right and power to determine what is and what shall constitute a nuisance within their respective corporate limits, and for the protection of ... the public water supply, shall have such power outside of the corporate limits ....

50 O.S.2011, § 16at all,50 O.S.2011, § 4

¶14 Based on the foregoing, we find the 2015 ordinance to be preempted by state law in so far as it declares lawful acts of the mines to be nuisances. Specifically, this holding invalidates the City's addition of paragraph 29 to Section 8.03.007 of its municipal code.

CONCLUSION

¶15 This case presents a problem that veers into the realm of public policy. While we sympathize with the City of Tishomingo, when it seeks relief from the application of generally applicable state law, as it does here, it must find an audience with the legislature or the appropriate administrative agency, not the courts. Because its 2015 ordinance sought, in relevant part, to override generally applicable state law, that portion of the ordinance is invalid, as outlined above.

¶16 AFFIRMED IN PART AND REVERSED IN PART.

WISEMAN, P.J., and RAPP, J., concur.

FOOTNOTES

See generally, Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34148 P.3d 842

See 82 O.S. § 1020.1et seq. ("Oklahoma Groundwater Law"); Findings of Fact and Conclusions of Law and Board Order, Oklahoma Water Resources Board (October 13, 2013).

any effect on the Pennington Creek watershed. Each side below offered extensive expert testimony on the question, but again, assertation of the correct answer does not bear on the outcome of the legal questions presented here.

or public water supply ...."

See, e.g, 60 O.S. § 6082 O.S. § 1EJacobs Ranch, L.L.C. v. Smith, 2006 OK 34148 P.3d 842

50 O.S. § 16in toto by the provisions of Oklahoma's Groundwater Law, or because the state has entirely "occupied the field" of groundwater law. There is no explicit repeal of 50 O.S. § 16L.E. Jones Drilling Co. v. Hodge, 2013 OK CIV APP 111315 P.3d 1025citing Burns v. U.S., 501 U.S. 129, 136, 111 S.Ct. 2182 (1991)). Repeals by implication are not favored. Roxana Petroleum Co. v. Cope, 1928 OK 442269 P. 108450 O.S. § 16

Knight ex rel. Ellis v. Miller, 2008 OK 81195 P.3d 372See Smith v. Westinghouse Elec. Corp., 1987 OK 3732 P.2d 466