OSCN Found Document:VULCAN CONSTRUCTION MATERIALS v. CITY OF TISHOMINGO

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 VULCAN CONSTRUCTION MATERIALS v. CITY OF TISHOMINGO
2023 OK CIV APP 5
526 P.3d 1171
Case Number: 118573
Decided: 04/22/2022
Mandate Issued: 03/02/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2023 OK CIV APP 5, 526 P.3d 1171

 

VULCAN CONSTRUCTION MATERIALS, LLC, and ARBUCKLE AGGREGATES, LLC, Plaintiffs/Appellants,
v.
CITY OF TISHOMINGO, OKLAHOMA, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
JOHNSTON COUNTY, OKLAHOMA

HONORABLE JEFF VIRGIN, TRIAL JUDGE

AFFIRMED IN PART AND REVERSED IN PART

Jon E. Brightmire, Kaylee Davis-Maddy, DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P. Tulsa, Oklahoma, for Plaintiff/Appellant Vulcan Construction Materials, LLC

Elizabeth C. Nichols, ELIZABETH C. NICHOLS, P.C., Edmond, Oklahoma for Plaintiff/Appellant Arbuckle Aggregates, LLC

Krystina E. Phillips, INDIAN AND ENVIRONMENTAL LAW GROUP, LLC, Ada, Oklahoma and
Michael Burrage, Patricia A. Sawyer, J. Renley Dennis, WHITTEN BURRAGE, Oklahoma City, Oklahoma, for Defendant/Appellee City of Tishomingo, Oklahoma

Anthony J. Ferate, Andrew W. Lester, SPENCER FANE, LLP, Oklahoma City, Oklahoma, for Amicus Oklahoma Aggregates Association

Brian M. Nazarenus, NAZARENUS STACK & WOMBACHER LLC, Greenwood Village, Colorado, for Amicus Curiae, The Oklahoma City Water Utilities Trust

Daniel McClure, Oklahoma City, Oklahoma, For Amicus Oklahoma Municipal League, Inc.

GREGORY C. BLACKWELL, JUDGE:

¶1 The plaintiffs, limestone mining companies operating or planning to operate[1] north of the city of Tishomingo, appeal a district court decision finding that alterations to the City of Tishomingo's nuisance ordinances--modifications that would severely limit the companies' operations and which directly conflict with state law permitting those same activities--are not preempted by state law. On review, we find the operative portion of the ordinances is preempted, but that other provisions are not. Accordingly, we reverse in part and affirm in part.

BACKGROUND

¶2 The City of Tishomingo, not unlike all municipalities, is deeply concerned about securing a reliable source of water for its citizens. But Tishomingo has a special reason to be concerned: currently, all of the city's water is derived from a single source--Pennington Creek--which emanates from the Arbuckle-Simpson aquifer just north of the city. The city has appropriation permits that allow it divert up to 7,520 acre-feet--being nearly 2.5 billion gallons--of water per year from Pennington Creek. However, the permits do the city no good if there's not enough water flowing in the creek. The city is concerned that the creek flows less and less each year, and it lays at least part of the blame at the feet of the plaintiffs. To say that the City of Tishomingo has a vested interest in the continual and robust flow of Pennington Creek would be a vast understatement.

¶3 The plaintiffs below are limestone mining companies operating in and near Pennington Creek, approximately eighteen miles northwest of Tishomingo's corporate limits. Unlike the City, the mines have little to no use for the water of Pennington Creek. To them (ironically), the water is nothing but a nuisance. To put it in its simplest possible terms, when these companies mine, they make deep and wide holes in the earth. Unabated, these holes would become small lakes, as groundwater seeps--and surface water flows--in. In order to do their work of removing earth, the companies must get the water out of the way.[2] So, they pump it out and dispose of it in accordance with state law. While the state laws at issue are somewhat complex, what is simple to understand, and all that is needed to be understood to resolve this case, is this: the state law in question is related not to how much the mines withdraw, but to how much they use. Per state law, the mines can withdraw and remove all the water they wish, as long as they return the vast majority of that water to the aquifer.

¶4 In this case, because they are operating on and near the Arbuckle-Simpson aquifer, which is a highly-regulated sensitive sole-source groundwater basin,[3] state law permits mines to use (and others to withdraw) no more than 0.2 acre-feet per year.[4] This is the equivalent of 65,170 gallons of water per year, per acre of land owned. This quantity of water is referred to as the owner's equal proportionate share. It is undisputed that the mining companies are in compliance with state law and regulations in that, although they are withdrawing far greater than their equal proportionate share, their overall use is far less than this amount, as the vast majority of the water they use goes back into the aquifer. The parties agree that current state law regulates the mining companies' use only. However, the present controversy arises because, according to the City, the companies are removing water from the Pennington Creek watershed, thereby affecting, or at least potentially affecting, the flow of Pennington Creek, but are replenishing the aquifer in a way that does not benefit Pennington Creek.[5]

¶5 In an effort to address its concerns, Tishomingo modified its City ordinances so as to limit mining companies' ability to remove water from the Pennington Creek watershed, irrespective of both whether the withdrawal occurs within the City's corporate territory and whether the company is returning the withdrawn water to the aquifer in accordance with state law.

¶6 The first ordinance, No. 2015-02, modified two sections of the City's municipal code to expand the City's definition of nuisance. After a lengthy preamble, the ordinance first amended section 8.03.003 of the City's code to delete the following stricken language:

It is unlawful for any person, including but not limited to any owner, lessee, or other person, to create or maintain a nuisance within the city or permit a nuisance to remain on premises under his control within the city.

Second, the City amended section 8.03.007 to add a twenty-ninth definition of acts that may constitute a "nuisance":

(29) The withdrawal of groundwater, in whole or in part, from the Pennington Creek subsurface watershed:

i. in excess of the amount that would be allowed by application of the Equal Proportionate Share; or

ii. that otherwise interferes with, degrades, or undermines the water quality or quantity of Pennington Creek.[6]

¶7 A second ordinance, No. 2017-01, was enacted in February of 2017. This ordinance added an entirely new section to Tishomingo's municipal code, No. 8.03.015, which describes a series of procedures that the City would follow to abate any nuisances occurring outside the City's corporate boundaries.

¶8 In March 2017, Vulcan filed a petition for declaratory and injunctive relief, arguing, among other things, that the regulations were preempted by state law and that Tishomingo was thereby powerless to enforce them. Arbuckle Aggregates (AA) filed its own petition seeking similar relief. The City responded and filed a counterclaim seeking declaratory judgment that the ordinances were constitutionally sound and within the statutory power granted to a municipality by 50 O.S. § 16 to regulate a nuisance that impairs the public water supply, even if the offending acts occur off city property. The City also sought judgment declaring that the mines were unlawfully impairing the flow of Pennington Creek. In October 2017, the two cases were consolidated.

¶9 The court held a seven-day trial, spanning November 2018 to February 2019, at which numerous lay and expert witnesses testified. In December 2019, the court issued its ruling, consisting of a sixty-eight page order, adopted nearly verbatim from the City's proposed findings of facts and conclusions of law, and which found for the City in all critical respects.[7] In relevant part, the court concluded the ordinances were not preempted by state law because the provisions of 82 O.S. § 1020.2 regulating aquifer water use do not completely preempt the police power given to a municipality by 50 O.S. § 16 to determine that an activity is a nuisance if it harms a public water supply.

¶10 Vulcan and AA each appealed the decision. In addition to the briefs filed by the parties, three amicus briefs were filed. The brief of the Oklahoma Aggregates Association opposes the trial court's decision, while the briefs of the Oklahoma Municipal League and Oklahoma City Water Utilities Trust support it.

STANDARD OF REVIEW

¶11 This case presents a pure question of law--namely, whether the ordinances in question are preempted by state law--and is therefore reviewed de novo. See Highpointe Energy, LLC v. Viersen, 2021 OK 32, ¶ 11, 489 P.3d 28.

ANALYSIS

¶12 Here, we are faced with a direct conflict between a state law and a local ordinance. The very act that state law permits--the mines' withdrawal of more than their respective share of water from the aquifer--is an act that is declared unlawful by the City's 2015 ordinance. However, city ordinances that directly conflict with state law are invalid. See Moore v. City of Tulsa, 1977 OK 43, ¶ 2, 561 P.2d 961, 963 ("A city under its charter and for a purpose justifying exercise of its police powers may enact an ordinance not in conflict with statutes on the same subject.") (emphasis supplied)); Allen v. City of Oklahoma City, 1998 OK CR 42, ¶ 4, 965 P.2d 387, 389 ("City ordinances may not run counter to the general laws of the state as enacted in statutes."); Smith v. State ex rel. Dep't of Pub. Safety, 2005 OK CIV APP 69, ¶ 9, 120 P.3d 897, 900. The parties do not dispute that the applicable state law and regulations allow the mines to withdraw more than their equal proportionate share so long as they replenish the aquifer as required. See 82 O.S. § 1020.2; OAC § 785-30-15 et. seq. (Subchapter 15: Water Trapped in Producing Mines). To the extent the ordinances under review conflict with what state law directly permits, they are invalid.[8]

¶13 To defend its ordinances, the City points to 50 O.S. § 16, which provides:

Cities and towns in this state shall have the right and power to determine what is and what shall constitute a nuisance within their respective corporate limits, and for the protection of ... the public water supply, shall have such power outside of the corporate limits ....

50 O.S.2011, § 16.[9] The trial court relied on this statute to sidestep the conflict between municipal and state authority here by saying, "the Challenged Orders regulate nuisances, not groundwater." But this overlooks the obvious effect of the ordinances and ignores the very real danger of municipalities enacting a patchwork of "nuisance laws" that completely obliterate state policy as it relates to groundwater, or some other issue of statewide concern. Although we do not agree with the mines' argument that there is no room for municipalities to regulate outside its corporate limits as to groundwater at all,[10] where there is a direct state statute on point, a municipality cannot make an end-run around that statute with the invocation of § 16. "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." 50 O.S.2011, § 4. The mines were fully permitted and doing that which state law specifically allows. Section 1020.2 of Title 82 expressly allows a mine to withdraw more than its proportionate share of water as long as its consumptive use does not exceed the proportionate share. Thus, Tishomingo had no authority to declare the mines' withdrawal of more water than allowed by the proportionate share a nuisance within the 2015 ordinance.

¶14 Based on the foregoing, we find the 2015 ordinance to be preempted by state law in so far as it declares lawful acts of the mines to be nuisances. Specifically, this holding invalidates the City's addition of paragraph 29 to Section 8.03.007 of its municipal code.[11] The remaining changes made by the 2015 ordinance and the entirety of the 2017 ordinance, neither of which is in conflict with applicable state law on its face, remain in effect.[12]

CONCLUSION

¶15 This case presents a problem that veers into the realm of public policy. While we sympathize with the City of Tishomingo, when it seeks relief from the application of generally applicable state law, as it does here, it must find an audience with the legislature or the appropriate administrative agency, not the courts. Because its 2015 ordinance sought, in relevant part, to override generally applicable state law, that portion of the ordinance is invalid, as outlined above.

¶16 AFFIRMED IN PART AND REVERSED IN PART.

WISEMAN, P.J., and RAPP, J., concur.

FOOTNOTES

[1] At the time suit was filed plaintiff/appellant Vulcan had active mining operations. Plaintiff/appellant Arbuckle Aggregates had state-issued permits, but was in planning stages only.

[2] The City disputes this point, arguing that the companies could engage in "underwater mining," and could limit their activities to mining above the water table. The mines disagree that either of these solutions is appropriate or feasible, but resolution of the dispute is not necessary to resolve the legal question before us.

[3] It is the only such basin in the state and has been the subject of significant legislation and litigation. See generally, Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, 148 P.3d 842, 855, as corrected (Nov. 6, 2006).

[4] An acre-foot of water is the depth of one foot of water over one acre, which is 43,560 square feet. Thus, an acre-foot is 43,560 cubic feet, which is just under 326,000 gallons. The figure of 0.2 acre-feet per year as the "equal proportionate share" of the Arbuckle-Simpson Aquifer was determined by order the Oklahoma Water Resources Board, dated October 13, 2013, pursuant to statutory authorization. See 82 O.S. § 1020.1 et seq. ("Oklahoma Groundwater Law"); Findings of Fact and Conclusions of Law and Board Order, Oklahoma Water Resources Board (October 13, 2013).

[5] These matters were disputed below. Specifically, the mines dispute whether their actions are having any effect on the Pennington Creek watershed. Each side below offered extensive expert testimony on the question, but again, assertation of the correct answer does not bear on the outcome of the legal questions presented here.

[6] The City also amended its definition-of-nuisance number sixteen, adding the following bolded language: "(16) Any pit, hole or other thing which is so construed, formed, conditioned or situated as to endanger the public safety or public water supply ...."

[7] The court held that a city resolution issued in conjunction with the 2015 ordinance was not enforceable. The City did not appeal this ruling and we are not presented with any issue related to the resolution in this appeal.

[8] Nor are we concerned here with "a matter of purely municipal concern" where the City's wishes might trump state law. Rather it is clear that the limits on the use and withdrawal of water from the state's only sensitive sole-source groundwater basin is a matter of statewide concern. See, e.g, 60 O.S. § 60 ("The use of groundwater shall be governed by the Oklahoma Groundwater Law .... All rights to the use of water in a definite stream in this state are governed by this section and other laws in Title 82 of the Oklahoma Statutes, which laws are exclusive and supersede the common law."); 82 O.S. § 1E ("Notwithstanding any other provision of law, the protection of the waters of the state as defined in Title 82 of the Oklahoma Statutes is declared to be a compelling state interest subject only to legislative authority ...."); Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶ 48, 148 P.3d 842, 855, as corrected (Nov. 6, 2006) ("Clearly, regulation of groundwater resources for the benefit of the public is a statewide concern. Although we are mindful of the fact that water supply is a basic concern of each of our political subdivisions, we do not view the regulation of the state's water resources as an affair of counties, cities or towns under art. 5, § 46.").

[9] The statue was amended, effective November 1, 2021, to state that "[a]ny action conducted by critical infrastructure sectors shall not constitute a nuisance when the applicable industry acts in compliance with or acts consistently with government rules, guidelines, laws and municipal ordinances or laws applicable to their sector." The mining companies filed a joint request to amend their briefing to address the change. Because we find that ordinance preempted in relevant part by state law, however, we need not address the effect of the amendment, if any, on the analysis.

[10] We highlight the narrow nature of our ruling here. A municipality may declare an act occurring outside its boundaries to be a nuisance under 50 O.S. § 16 in the appropriate case. However, this is not an appropriate case. In other words, we do not agree with the mines' argument that § 16 was impliedly or explicitly repealed in toto by the provisions of Oklahoma's Groundwater Law, or because the state has entirely "occupied the field" of groundwater law. There is no explicit repeal of 50 O.S. § 16 in the Groundwater Law. Legislative silence on a well-established point of law is not indicative of the abrogation of prior law. L.E. Jones Drilling Co. v. Hodge, 2013 OK CIV APP 111, ¶ 10, 315 P.3d 1025 (citing Burns v. U.S., 501 U.S. 129, 136, 111 S.Ct. 2182 (1991)). Repeals by implication are not favored. Roxana Petroleum Co. v. Cope, 1928 OK 442, ¶ 0, Syl. 3, 269 P. 1084. If the legislature had intended to impliedly repeal all or part of 50 O.S. § 16, we would have expected some clearer statement to that effect. Nor do we see any rational reason why the state would repeal all local regulation of any and all nuisances that might injure local water supplies because it had chosen to set groundwater withdrawal limits in the Arbuckle-Simpson aquifer. We decline to make such a broad ruling in this case because, as we discussed, a clear conflict preemption exists between the 2015 Ordinance and state law as it relates to a mine's ability to withdraw groundwater.

[11] We find no pertinent distinction between part (i) or part (ii) of paragraph 29. Both make unlawful acts that are specifically permitted by state law, and both are therefore preempted.

[12] We find no occasion to review the 2017 ordinance on this record. The provisions of the code section created by the ordinance have not been invoked by the City. They may have some application in a proper future case. Any opinion as to the application of those procedures to a hypothetical claim of nuisance outside the corporate limits of the City would be purely conjectural, which is not permissible. Knight ex rel. Ellis v. Miller, 2008 OK 81, 195 P.3d 372. Additionally, we note that the mining companies make numerous additional arguments against the legality of the ordinances, including questioning their constitutionality. However, because we find the bulk of the City's efforts preempted, we decline to review those issues. See Smith v. Westinghouse Elec. Corp., 1987 OK 3, n. 3, 732 P.2d 466 ("The judiciary will not decide constitutional issues in advance of strict necessity.").

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1998 OK CR 42, 965 P.2d 387, 69 OBJ 2520, 
Allen v. Oklahoma City
Discussed

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2005 OK CIV APP 69, 120 P.3d 897, 
SMITH v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed

 
2013 OK CIV APP 111, 315 P.3d 1025, 
L.E. JONES DRILLING CO. v. HODGE
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 3, 732 P.2d 466, 58 OBJ 68, 
Smith v. Westinghouse Elec. Corp.
Discussed

 
2006 OK 34, 148 P.3d 842, 
JACOBS RANCH, L.L.C. v. SMITH
Discussed at Length

 
2008 OK 81, 195 P.3d 372, 
KNIGHT v. MILLER
Discussed

 
1977 OK 43, 561 P.2d 961, 
MOORE v. CITY OF TULSA
Discussed

 
1928 OK 442, 269 P. 1084, 132 Okla. 152, 
ROXANA PETROLEUM CO. v. COPE
Discussed

 
2021 OK 32, 489 P.3d 28, 
HIGHPOINTE ENERGY v. VIERSEN
Discussed

Title 50. Nuisances

 
Cite
Name
Level

 
50 O.S. 4, 
Things Done Under Express Authority of Statute not a Nuisance
Cited

 
50 O.S. 16, 
Cities and Towns - Abatement of Nuisances - Critical Infrastructure Sectors
Discussed at Length

Title 60. Property

 
Cite
Name
Level

 
60 O.S. 60, 
Water Ownership - Rights to Use Water
Cited

Title 82. Waters and Water Rights

 
Cite
Name
Level

 
82 O.S. 1E, 
Legislative Preemption - Protection of State Waters
Cited

 
82 O.S. 1020.1, 
Definitions
Cited

 
82 O.S. 1020.2, 
Declaration of Policy - Promulgation of Rules - Consumptive Use - Augmentation of Stream Flow or Groundwater
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA